991 P.2d 1135 (2000)
139 Wash.2d 793
Kelly SMITH, Petitioner,
v.
BATES TECHNICAL COLLEGE; College District No. 28; William P. Mohler; Jon Thorpe; Deborah Emond; and Sally Cofchin, Respondents.
No. 67374-8.
Supreme Court of Washington, En Banc.
Argued June 24, 1999.
Decided January 27, 2000.
*1137 Eric Hansen, Federal Way, for Petitioner.
Christine Gregoire, Attorney General, Paul Triesch, Asst. Atty. Gen., Seattle, for Respondents.
*1136 SANDERS, J.
The question is whether the common law tort of wrongful discharge in violation of public policy extends to employees who may be terminated only for cause and, if so, whether an employee must first exhaust administrative or contractual remedies before pursuing such an action. We are also asked to decide whether a public employee establishes a cause of action under 42 U.S.C. § 1983 when a public agency discharges her in retaliation for filing an employment related grievance. We review an unpublished decision of the Court of Appeals which affirmed dismissal of the employee's claims, and reverse in part.

FACTS
Bates Technical College (Bates) is a vocational-technical institution operated by the State of Washington. RCW 28B.50.030(11). Bates employed Kelly Smith as a traffic programmer for its on-site television station, KBTC-TV, from February 1986 until February 1994.
While employed at Bates, Smith was a state technical college employee entitled to those civil service protections applicable to higher education employees. See RCW 41.56.024. Additionally, Smith was at all times a member of the Tacoma Association of Public School Professional-Technical Employees Union (the union). Under the collective bargaining law for higher education personnel, an institution of higher education and a union may elect to have their relationship and corresponding obligations governed by RCW 41.56.[1]See RCW 41.56.201. Because Smith's union apparently elected to participate in the collective bargaining process, she was subject to RCW 41.56 and the collective bargaining agreement (CBA) negotiated by her union. The CBA allowed an employee to be disciplined only "for cause" and established a grievance procedure for any claim based on an alleged violation of the CBA, written college policies, regulations and rules, or unfair and inequitable treatment.
Prior to 1991 Deborah Emond was Smith's immediate supervisor. Smith received favorable performance evaluations from Emond. Following a restructuring at Bates in September 1991, Emond became the station manager. Avon Killion was selected for the position of supervisor of programming and fundraising and became Smith's immediate supervisor.[2] This restructuring led to a series *1138 of problems between Smith and her supervisors.
In July 1993 Smith filed her first grievance alleging Emond violated the CBA by unilaterally changing her job description. After filing this grievance Smith's relationship with Emond began to seriously deteriorate. According to Smith, Emond refused to respond to Smith and avoided making eye contact with her. Although Smith demanded this grievance be submitted to arbitration, she withdrew her demand shortly before the arbitration was scheduled to begin.
Smith filed a second grievance to contest the docking of her pay for leaving the work area at a time other than her scheduled lunch or break period. John Thorpe, senior vice president of Bates, denied Smith's grievance, finding: "[Y]our conduct in this situation constitutes misconduct and insubordination. You are hereby reprimanded for this misconduct and insubordination and your personnel file will so reflect this." Ex. 3.
In late October 1993 Smith took medical leave, ostensibly due to job stress. While on leave, Smith received two letters from Emond requesting return of certain documents, suggesting Smith had stolen them. Smith responded to the first letter by stating she did not steal the items mentioned by Emond. In a letter dated January 10, 1994, Smith was reprimanded for failing to provide the data requested by Emond. Smith grieved this reprimand. Additionally, in a memorandum addressed to Emond, Smith detailed numerous problems she experienced after returning from medical leave. According to Smith, Emond did not help her resolve these problems.
Upon her return to work, Smith began cross-training Karin Jackson as a backup in Smith's position. According to Karin Jackson, Smith allegedly made threatening remarks about several co-workers whom Smith believed were a "clique." Karin Jackson reported this alleged incident to Sally Cofchin, Bates' Director of Personnel. Cofchin and several other managers met with Smith to confront her with Karin Jackson's accusations. Although Smith admits she discussed her anger and the workplace stress, Smith contends she did not threaten any employee of Bates. In December 1993, Smith responded by grieving the allegations leveled against her.
In January 1994 Smith filed an additional grievance after being required to submit a leave slip for her late arrival to work. When asked to submit the leave slip, Smith allegedly became enraged and shouted at her supervisor and another employee. As a result of this conduct Smith was issued a reprimand, which she subsequently grieved. Smith filed yet another grievance alleging her supervisor violated the confidentiality of the grievance process by circulating her letter of reprimand to three employees of Bates.
On February 11, 1994 William Mohler, president of Bates, dismissed Smith from her employment. This action followed a meeting between management and Smith designed to avoid the dismissal. Smith filed a grievance to contest her termination under the CBA, which proceeded to arbitration. The arbitrator issued an award in favor of Smith, ruling:
[Smith] was not terminated for cause and following progressive discipline. The College shall promptly offer to reinstate her to her former position and shall make her whole for all direct and indirect benefits lost due to her improper termination. The College shall also remove from [Smith's] personnel [file] all records pertaining to the course of dealing leading to this case including particularly the February 2 letter warning of possible termination and all of the documents referenced in that letter.
Clerk's Papers at 88. Bates complied with the order by reinstating Smith, reimbursing her lost wages and benefits, and purging her personnel file. Smith received back pay for three months in the amount of $10,728.00 plus accrued benefits in the amount of $2,765.93 for social security, retirement, health insurance, and medical aid/industrial insurance.
In addition to filing these numerous grievances, Smith filed four separate unfair labor practice (ULP) complaints with the Public *1139 Employment Relations Commission (PERC). Two ULPs preceded Smith's dismissal and two followed her dismissal. In these ULPs, Smith complained of retaliation for filing her earlier grievances and challenged her dismissal by Bates.
Before PERC could address these claims, Smith filed a complaint in Pierce County Superior Court. Smith ultimately sued Bates, the college district of which it is a part, and four supervisory personnel, seeking monetary damages for wrongful discharge in violation of public policy, defamation, and violation of her First Amendment rights pursuant to 42 U.S.C. § 1983.
Bates moved for summary judgment on all the claims. The trial court granted Bates' motion in part, dismissing Smith's wrongful termination claim for failure to exhaust her remedies with PERC. The trial court also dismissed Smith's § 1983 claim as to the college, but not the individuals. At the conclusion of the trial the court granted the defense motion to dismiss the remaining § 1983 claims. The trial court reasoned: "There needs to be a public element involved in either the speech or the petition. And since counsel for plaintiff has admitted that there is no public issue here, I think that Binkley [v. City of Tacoma, 114 Wash.2d 373, 787 P.2d 1366 (1990) ], Gearhart [v. Thorne, 768 F.2d 1072 (9th Cir.1985) ], and the decisions from the other six circuits control." Report of Proceedings at 690. The trial court allowed the defamation claim to proceed, but the jury found Smith had not been defamed. However the trial court awarded Smith $10,407.50 for attorneys fees incurred in the successful arbitration proceeding.
The Court of Appeals, Division Two, affirmed the decision of the superior court in an unpublished opinion. Smith v. Bates Technical College, No. 19937-8-II, 1998 WL 275591, 91 Wash.App. 1008 (Wash.Ct.App. May 29, 1998). We granted review confined to the issues of the common law tort of wrongful discharge in violation of public policy and 42 U.S.C. § 1983.

ANALYSIS
When reviewing a grant of summary judgment, we engage in the same inquiry as the trial court. RAP 9.12; Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 737, 844 P.2d 1006 (1993). A summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See CR 56(c); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). All facts and reasonable inferences are reviewed in the light most favorable to the nonmoving party; all questions of law are reviewed de novo. Id. Because the trial court decision involves questions of law, our review of both issues in this case is de novo. See Department of Labor & Indus, v. Fankhauser, 121 Wash.2d 304, 308, 849 P.2d 1209 (1993).

I. Tort of Wrongful Discharge in Violation of Public Policy
Under Washington common law, an employer could generally discharge an employee with or without cause absent an agreement to the contrary. Roberts v. Atlantic Richfield Co., 88 Wash.2d 887, 891, 568 P.2d 764 (1977). However, an employer's absolute prerogative to discharge an employee has not remained unfettered. In Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984), we joined a growing number of jurisdictions when we recognized a cause of action in tort for wrongful discharge in violation of public policy. "The policy underlying the exception is that the common law doctrine cannot be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy." Id. at 231, 685 P.2d 1081. We explained "The exception has been utilized in instances where application of the terminable at will doctrine would have led to a result clearly inconsistent with a stated public policy and the community interest it advances." Id. (citing Roberts v. ARCO, 88 Wash.2d 887, 897, 568 P.2d 764 (1977)). To clarify the purpose underlying the public policy exception, we compared two cases from other jurisdictions:
[I]n Harless v. First Nat'l Bank, 162 W.Va. 116, 246 S.E.2d 270 (1978) a bank employee was discharged after attempting to make his employer comply with the state consumer credit and protection laws.

*1140 The West Virginia Supreme Court held that despite the general rule, the bank could be liable for wrongful discharge because the discharge would otherwise frustrate a clear manifestation of public policy, protection of consumers of credit. In contrast to the result reached in Harless, when the interest alleged by the plaintiff/employee has been found to be purely private in nature and not of general public concern, the general rule applied and no liability attached to the employer's action. See, e.g., Campbell v. Ford Indus., Inc., 274 Or. 243, 546 P.2d 141 (1976) (employee/stockholder allegedly fired for pursuing stockholders' rights against employer).
Thompson, 102 Wash.2d at 231-32, 685 P.2d 1081. Thus, in Washington the tort of wrongful discharge is not designed to protect an employee's purely private interest in his or her continued employment; rather, the tort operates to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy.
The threshold issue in this case is whether the tort of wrongful discharge extends to employees who are terminable only for cause. Affirming the summary dismissal of Smith's wrongful discharge claim, the Court of Appeals noted this remedy is "`generally, if not exclusively, applied to employment at will situations.'" Smith, slip op. at 8 (quoting Micone v. Town of Steilacoom Civil Serv. Comm'n, 44 Wash.App. 636, 643 n. 2, 722 P.2d 1369 (1986)). Smith contends the tort of wrongful discharge should not be limited to at-will employees, but should be extended to cover employees who may be dismissed only for cause. Conversely, Bates argues the wrongful discharge doctrine does not apply to classified state employees who are protected by a CBA and statutory remedies.
At first glance, Bates' argument finds support in prior decisions that broadly suggested the common law tort of wrongful discharge applies only to at-will employees. In Reninger v. Department of Corrections, 134 Wash.2d 437, 951 P.2d 782 (1998), we questioned the viability of the tort "where other relief is available to an affected employee." Id. at 445, 951 P.2d 782 (citing Micone, 44 Wash.App. at 643 n. 2, 722 P.2d 1369, and Albright v. State, 65 Wash.App. 763, 768-69, 829 P.2d 1114 (1992)). And in White v. State, 131 Wash.2d 1, 929 P.2d 396 (1997), we declined to extend the tort to include wrongful transfers and refused to subject each disciplinary decision of the employer to judicial scrutiny. "This is particularly true in instances like this one where an employee's rights are already protected by civil service rule, by a collective bargaining agreement, and by civil rights statutes." Id. at 20, 929 P.2d 396. Furthermore, the United States District Court for the Eastern District of Washington observed: "[T]he claim of `discharge in violation of public policy' exists only as a narrow exception to the at-will doctrine; there is no such claim in cause-only employment." Keenan v. Allan, 889 F.Supp. 1320, 1367 (E.D.Wash.1995), aff'd, 91 F.3d 1275 (9th Cir.1996).[3]
However, we find compelling the arguments made in favor of extending the tort to all employees. In Wilson v. City of Monroe, 88 Wash.App. 113, 121, 943 P.2d 1134 *1141 (1997), review denied, 134 Wash.2d 1028, 958 P.2d 318 (1998), Division One held the cause of action for wrongful termination in violation of public policy extends to all employees and may be brought "notwithstanding the existence of other remedies." Allowing a former municipal employee to sue for wrongful termination in retaliation for "whistleblowing," the court reasoned, "[T]he tort cause of action for termination in contravention of public policy is not confined to at-will employment situations, but is available to all employees because the tort embodies a strong state interest in protecting against violations of public policy." Id. at 115-16, 943 P.2d 1134. The court recognized the tort of wrongful discharge in violation of public policy is distinct from an action based in contract and explained:
Wilson's right to be free from wrongful termination in contravention of public policy may not be altered or waived by private agreement, and is therefore a nonnegotiable right. Furthermore, the right does not originate in the CBA provision that requires just cause for termination, or depend on interpretation of the CBAthe right is independent of any contractual agreement between Wilson and the City.
Id. at 117-18, 943 P.2d 1134 (emphasis added) (footnote omitted).
Holding the tort of wrongful discharge in violation of public policy does not extend to employees who may be dismissed only for cause simplistically ignores the fundamental distinction between tort and contract actions. As the court explained in Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 176, 610 P.2d 1330, 164 Cal.Rptr. 839 (1980), the theoretical reason for labeling a discharge as "wrongful" is not based on the terms and conditions of an employment contract, but rather arises out of the employer's duty to conduct its affairs in compliance with public policy. Relying on this logic, the California Court of Appeals held:
[T]here is no logical basis to distinguish in cases of wrongful termination for reasons violative of fundamental principles of public policy between situations in which the employee is an at-will employee and in which the employee has a contract for a specified term. The tort is independent of the term of employment.
Koehrer v. Superior Court, 181 Cal.App.3d 1155, 1166, 226 Cal.Rptr. 820, 826 (1986); see also Foley v. Interactive Data Corp., 47 Cal.3d 654, 765 P.2d 373, 254 Cal.Rptr. 211 (1988). Professor Prosser has explained:
`[Whereas] [c]ontract actions are created to protect the interest in having promises performed,' `[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties....'
Koehrer, 181 Cal.App.3d at 1165, 226 Cal. Rptr. 820 (quoting William L. Prosser, The Law of Torts 613 (4th ed.1971)); see also Foley, 47 Cal.3d at 667 n. 7, 254 Cal.Rptr. 211, 765 P.2d 373 ("What is vindicated through the cause of action is not the terms or promises arising out of the particular employment relationship involved, but rather the public interest in not permitting employers to impose as a condition of employment a requirement that an employee act in a manner contrary to fundamental public policy."). It logically follows when any employee is terminated in violation of a clear mandate of public policy, the employee should be permitted to recover for the violation of his or her legal rights.
Bates makes much of the remedies afforded Smith through her CBA. But while the contractual remedies available to certain employees redress violations of the underlying employment contract, these remedies do not protect an employee who is fired not only "for cause" but also in violation of public policy. Bates' position thus illogically grants at-will employees greater protection from these tortious terminations due to an erroneous presumption the contractual employee does not "need" such protection.
Further, Bates fails to acknowledge additional and distinct remedies would be available to Smith were she allowed to sue in tort. See Cagle v. Burns & Roe, Inc., 106 Wash.2d 911, 919, 726 P.2d 434 (1986) (damages for emotional distress are recoverable in tort action based on wrongful termination in violation *1142 of public policy). Although Bates correctly notes PERC has the authority to issue "appropriate remedial orders," RCW 41.56.160(1), Bates cites no authority for the proposition PERC is authorized to award damages for emotional distress. Further, while PERC is "empowered and directed to prevent any unfair labor practice," RCW 41.56.160(1), PERC does not have the authority to adjudicate wrongful discharge tort actions. See State ex rel. Graham v. Northshore Sch. Dist. No. 417, 99 Wash.2d 232, 240, 662 P.2d 38 (1983) ("The declaration of legal rights and interpretation of legal questions is the province of the courts and not of administrative agencies."). Thus, Bates' assumption that Smith's pending action before PERC will fully resolve her wrongful discharge claim is wholly unsupported.
In Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 473 N.E.2d 1280, 85 Ill.Dec. 475 (1984), the court granted union members protected by a CBA the right to sue in tort for wrongful discharge and focused on the different remedies available.
It would be unreasonable to immunize from punitive damages an employer who unjustly discharges a union employee, while allowing the imposition of punitive damages against an employer who unfairly terminates a nonunion employee. The Public policy against retaliatory discharges applies with equal force in both situations.
Midgett, 85 Ill.Dec. 475, 473 N.E.2d at 1284. Similarly in Retherford v. AT & T Communications of Mt. States, Inc., 844 P.2d 949 (Utah 1992), the court reasoned:
When an employer's act violates both its own contractual just-cause standard and a clear and substantial public policy, we see no reason to dilute the force of the double sanction. In such an instance, the employer is liable for two breaches, one in contract and one in tort. It therefore must bear the consequences of both.
Id. at 960. We too see no justified reason to deny Smith the opportunity to recover damages for emotional distressthereby immunizing the alleged tortious conduct of her employersimply because her administrative and contractual remedies may partially compensate her wrongful discharge.
Finally, our decision here is consistent with Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 913 P.2d 377 (1996). In Gardner, we extended the tort of wrongful discharge and held the employer, Loomis Armored, violated public policy by discharging an employee for disobeying a company rule in order to save a woman from a life-threatening hostage situation. As Justice Madsen correctly noted in her dissent, the majority there applied the public policy doctrine to a "for cause" employee, refusing to limit the remedy to at-will employment situations:
Loomis' employee handbook states that violation of the rule forbidding a driver from leaving an armored vehicle will be grounds for termination. Thus, the majority has applied a formerly narrow exception to the terminable-at-will doctrine to a situation where an employer provided just cause for termination and where the employment-at-will rule is inapplicable. The result of the majority's analysis is that the public policy exception to employment-at-will now applies to a fifth, completely incompatible category; that is, where this court disagrees with an employer's definition of just cause for termination, as set forth in the workplace rules.
Gardner, 128 Wash.2d at 952, 913 P.2d 377 (Madsen, J., dissenting) (citation omitted). Thus as the Gardner majority opted to extend the tort of wrongful discharge in violation of public policy to a situation outside the employment at-will context, we now find it unnecessary to distinguish between at-will and for cause employees as the tort is equally applicable to all.
Bates contends even if the tort of wrongful discharge is extended to all employees, Smith has not stated a claim for wrongful discharge in violation of public policy. When determining whether a clear mandate of public policy is violated, we consider "`whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.'" Thompson, 102 Wash.2d at 232, 685 P.2d 1081 (quoting Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625, 631 (1982)). Prior judicial decisions may also establish the public policy. Thompson, 102 *1143 Wash.2d at 232, 685 P.2d 1081. A cause of action for wrongful discharge in violation of public policy exists where an employee is fired for exercising a legal right or privilege. Gardner, 128 Wash.2d at 936, 913 P.2d 377 (citing Dicomes v. State, 113 Wash.2d 612, 618, 782 P.2d 1002 (1989)).
Here, Smith alleges her termination violated the public policy against discharging an employee for pursuing a grievance. As RCW 41.56 and Washington precedent establish a public employee's pursuit of a grievance is a protected legal right, Smith has identified a relevant public policy. See RCW 41.56.140(3) (unfair labor practice for public employer to discriminate against a public employee who has filed an unfair labor practice charge); Clallam County v. Public Employment Relations Comm'n, 43 Wash.App. 589, 599, 719 P.2d 140 (1986) (unfair labor practice for a public employer to discharge an employee for engaging in the protected right of pursuing a grievance).
Extending the tort of wrongful discharge to all employees advances the underlying purpose of the tort by prohibiting any employer from frustrating the important public policies of this state. Further, allowing employees whether terminable at-will or for causeto sue for wrongful discharge in violation of public policy acknowledges the fundamental distinction between an action based in tort and one based in contract. Accordingly, we hold Smith may bring an action in tort for wrongful discharge in violation of her protected legal right to file grievances.

II. Exhaustion of Remedies
Smith argues if the tort of wrongful discharge is not limited to at-will employees, employees should not be required to exhaust administrative or contractual remedies before bringing an action in tort. The Court of Appeals disagreed, holding: "Employees subject to the civil service laws must first exhaust their administrative remedies before seeking relief or appealing to superior court." Smith, slip op. at 8 (citing Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 866, 947 P.2d 1208 (1997)).
The doctrine of exhaustion of administrative remedies is well established in Washington. In general, a party must exhaust all available administrative remedies prior to seeking relief in superior court. Citizens for Mount Vernon, 133 Wash.2d at 866, 947 P.2d 1208 (citing Simpson Tacoma Kraft Co. v. Department of Ecology, 119 Wash.2d 640, 646, 835 P.2d 1030 (1992)). The court will not intervene and administrative remedies must be exhausted when: (1) a claim is cognizable in the first instance by an agency alone; (2) the agency has clearly established mechanisms for the resolution of complaints by aggrieved parties; and (3) the administrative remedies can provide the relief sought. South Hollywood Hills Citizens Ass'n v. King County, 101 Wash.2d 68, 73, 677 P.2d 114 (1984). The principle is founded on the belief that the judiciary should give proper deference to the body possessing expertise in areas outside the conventional expertise of judges. Id.; Retail Store Employees Union, Local 1001 v. Washington Surveying & Rating Bureau, 87 Wash.2d 887, 906, 909, 558 P.2d 215 (1976).
Bates argues that because Smith did not pursue her ULPs with PERC, she did not exhaust her administrative remedies to the extent required by law. Due to this failure Bates asserts the trial court properly exercised its discretion to dismiss Smith's wrongful termination claim. But Bates' argument ignores the fundamental distinction between a wrongful discharge action based in tort and an action based upon an alleged violation of an employment contract or a CBA. As we have explained, the tort of wrongful discharge seeks to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy. Because the right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement or civil service law, we conclude Smith should not be required to exhaust her contractual or administrative remedies.
Courts that extend the wrongful discharge tort to employees such as Smith do not require exhaustion. The court in Wilson held that a former municipal employee was not *1144 required to exhaust his collective bargaining remedies before bringing a wrongful discharge claim.
Wilson's right to be free from wrongful termination in contravention of public policy may not be altered or waived by private agreement, and is therefore a nonnegotiable right. Furthermore, the right does not originate in the CBA provision that requires just cause for termination, or depend on interpretation of the CBAthe right is independent of any contractual agreement between Wilson and the City. This is true even though resolution of the dispute may require examination of the same set of facts as would arbitration under the CBA.
Wilson, 88 Wash.App. at 117-18, 943 P.2d 1134 (footnotes omitted). Similarly, courts in other jurisdictions have also held exhaustion is not a prerequisite to bringing a claim for wrongful discharge in violation of public policy. See Finch v. Holladay-Tyler Printing, Inc., 322 Md. 197, 206, 586 A.2d 1275 (1991) (no need to resort to arbitration because issue addressed by arbitration would not be determinative of wrongful discharge claim); Midgett, 105 Ill.2d at 152, 85 Ill.Dec. 475, 473 N.E.2d 1280 (plaintiff need not plead the exhaustion of contract remedies to bring an action in tort).
The Court of Appeals recently addressed this question in a similar context. In Milligan v. Thompson, 90 Wash.App. 586, 953 P.2d 112 (1998), a state employee argued the statute of limitations on his discrimination and tort claims tolled during the pendency of the appeal of his dismissal to the State of Washington Personnel Appeals Board (PAB). The court disagreed, reasoning because exhaustion was not required the statute of limitations was not tolled.
Nor was [the plaintiff] required to exhaust his administrative remedies before bringing his tort actions because there is no showing that those claims were initially cognizable by the PAB alone, were within its special expertise, or that the PAB could provide the relief he sought.
Milligan, 90 Wash.App. at 597, 953 P.2d 112; see also Morales v. Westinghouse Hanford Co., 73 Wash.App. 367, 869 P.2d 120 (1994).
The logic of Milligan applies with equal force to the instant case. Bates has made no showing PERC has the authority to adjudicate wrongful discharge tort actions or that these actions are within its special expertise. Rather, PERC is simply "empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders." RCW 41.56.160(1). Further, PERC must petition the superior court for the enforcement of its orders. RCW 41.56.160(3). And while RCW 41.56.160(2) authorizes "such affirmative action as will effectuate the purposes and policy of this chapter, such as the payment of damages and the reinstatement of employees," it does not clearly authorize all damages that would be available in a tort action. See Cagle, 106 Wash.2d at 919, 726 P.2d 434 (damages for emotional distress recoverable in tort action based on wrongful termination in violation of public policy).
Our conclusion Smith is not required to exhaust her administrative remedies is even more compelling after examining one of our recent decisions. In Reninger v. Department of Corrections, 134 Wash.2d 437, 445, 951 P.2d 782 (1998), two prison guards resigned after being demoted and reassigned to positions they felt were unreasonably dangerous. Although they had several statutory remedies available to them, they did not challenge their reassignments under the Industrial Safety and Health Act (RCW 49.17) or civil service laws. They did appeal their dismissals to the PAB, which denied their appeal and found they had been fired for gross misconduct. Id. at 443, 951 P.2d 782. We affirmed the Court of Appeals, finding the decision of the PAB had collateral estoppel effect in the superior court proceeding for wrongful constructive discharge. Id. at 454, 951 P.2d 782.
Under Reninger, an employee who loses in an administrative proceeding will be collaterally estopped from attempting to prove the distinct tort of wrongful discharge in violation of public policy. Thus, if employees are required to exhaust all available administrative remedies in order to bring a civil suit for wrongful termination, the administrative remedy could be the only available remedy. Such a rule goes beyond the usual *1145 understanding of exhaustion as a prerequisite to seeking judicial relief, see Citizens for Mount Vernon, 133 Wash.2d at 866, 947 P.2d 1208, and ignores the fundamental distinction between contract and tort actions.
Because a wrongful termination claim is independent of any contractual agreement or statute and PERC does not have the exclusive authority or expertise to decide tort claims, we hold Smith should not have been required to exhaust her contractual or administrative remedies before suing in superior court.

III. First Amendment Claim
The Court of Appeals also upheld the dismissal of Smith's claim under 42 U.S.C. § 1983, ruling: "[Smith's] grievances stemmed from disputed charges of insubordination and misconduct she claims were made in retaliation for Smith's actions. As in Gearhart, these are `matters only of personal interest' that are not protected by the First Amendment." Smith, slip op. at 5 (quoting Gearhart v. Thorne, 768 F.2d 1072, 1073 (9th Cir.1985)). Smith contends the First Amendment petition clause[4] protects the right of a public employee to file an official grievance involving matters of personal interest.
Under 42 U.S.C. § 1983, a public employee may state cause of action for discharge or other discipline resulting from the exercise of rights guaranteed under the First Amendment. See White v. State, 131 Wash.2d 1, 10, 929 P.2d 396 (1997). A public employee who alleges retaliatory discharge from government employment must show: (1) the conduct that triggered the discharge was protected under the First Amendment, and (2) the protected conduct was a substantial or motivating factor in the adverse employment decision. See White, 131 Wash.2d at 10, 929 P.2d 396; Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the employee is able to prove these elements, the burden then shifts to the employer to prove it would have made the same decision in the absence of the employee's protected conduct. See Mt. Healthy City Sch. Dist. Bd. of Educ., 429 U.S. at 287, 97 S.Ct. 568; Binkley v. City of Tacoma, 114 Wash.2d 373, 382, 787 P.2d 1366 (1990).
Where the alleged retaliation is based on expressive conduct constituting speech, a court must first determine whether the speech can be characterized as addressing a "matter of public concern." Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest ... a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
Id. at 147, 103 S.Ct. 1684. If the court determines the speech involves matters of public concern, it must then balance the employee's interest in exercising his or her right to freedom of speech against the interest of the State "`as an employer, in promoting the efficiency of the public services it performs through its employees.'" Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quoting Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).
Smith's expressive conduct here was not limited to speech. It included filing both formal grievances through her CBA and filing ULPs with PERC. Smith argues this conduct triggered the protection of the petition clause of the First Amendmentrather than the freedom of speech clauseand asks us to hold the petition clause does not implicate the "public concern" element established in Connick. Instead, Smith believes all employees who file internal grievances with a governmental employer receive protection from adverse employment actions, regardless of the private nature of the grievance.
Smith's argument is based upon a flawed premise. Smith apparently presumes that *1146 because she filed formal workplace grievances with "the government," this conduct triggered the petition clause of the First Amendment. But this position ignores the government's role as an employer and would accord greater rights to government employees. "Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State." Connick, 461 U.S. at 147, 103 S.Ct. 1684.
Smith's position would require us to elevate the protection afforded by the petition clause above that afforded by the other clauses of the First Amendment, "a premise that is undermined by the Supreme Court's repeated references to these clauses as being overlapping." Day v. South Park Indep. Sch. Dist., 768 F.2d 696, 701 (5th Cir.1985). As the Supreme Court observed in McDonald v. Smith, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), "[t]he right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression."
Moreover, seven of the eight circuit courts addressing this issue have held a public employee who alleges he or she was disciplined in retaliation for filing a grievance against the employer does not state a claim under § 1983 unless the grievance addressed a matter of public concern. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir.1993) ("The First Amendment right to petition the government for a redress of grievances ... is `generally subject to the same constitutional analysis' as the right to free speech." (quoting Wayte v. United States, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985))); Day, 768 F.2d at 703 ("An employee's complaint to her superior on a personal matter is no more a matter of public concern when embodied in a letter to him requesting a hearing than it is when spoken to him."); Rice v. Ohio Dep't of Transp., 887 F.2d 716, 721 (6th Cir.1989) ("[Plaintiff] was not `speak[ing] out as a citizen' when he filed his reverse discrimination charge."), vacated on other grounds by 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990); Altman v. Hurst, 734 F.2d 1240, 1244 n. 10 (7th Cir.1984) (per curiam) ("[A] private office dispute cannot be constitutionalized merely by filing a legal action."); Belk v. Town of Minocqua, 858 F.2d 1258, 1262 (7th Cir.1988) ("[W]e decline to hold as a matter of law that the fact that [the employer] may have terminated [the employee] in retaliation for threatening to file a grievance constitutes a per se violation of the first amendment."); Gearhart, 768 F.2d at 1073 (per curiam) (grievances related to "`matters only of personal interest,' and do not invoke first amendment protection" (quoting Connick, 461 U.S. at 147, 103 S.Ct. 1684)); Renfroe v. Kirkpatrick, 722 F.2d 714, 715 (11th Cir. 1984) (per curiam) ("[P]laintiff's grievance is protected under the First Amendment only if it related to a matter of public concern."). Cf. Boyle v. Burke, 925 F.2d 497, 505-06 (1st Cir.1991) (dicta). Only the Third Circuit has disagreed, holding a grievance or lawsuit brought by a public employee is constitutionally protected, regardless of whether it involved a matter of public concern. San Filippo v. Bongiovanni, 30 F.3d 424, 442 (3d Cir.1994).
The Ninth Circuit recently criticized the holding of San Filippo in Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir.1997), cert. denied, 524 U.S. 952, 118 S.Ct. 2368, 141 L.Ed.2d 737 (1998).
[T]he Third Circuit's analysis .... diverges from the Supreme Court's teachings that the primary function of the First Amendment is to facilitate participation in a free political process and that the First Amendment extends its guarantees to public employees in order to encourage such participation. Moreover, it equates the government's conduct as employer with its conduct as government. When government as employer disciplines an employee for pursuing litigation, it does not act as "the very government" which established the mechanism for redress in accordance with its constitutional obligation, but rather in its role as an employer.
Rendish, 123 F.3d at 1223. Following the majority of the circuits, the court held, "Regardless *1147 of whether the right to grieve an employment dispute is characterized as the exercise of the right to petition or the right to free speech, the same public concern requirement applies." Id.
We believe the better reasoned view is that a public employee's claim against a public employer under 42 U.S.C. § 1983 alleging a violation of the employee's petition clause rights under the First Amendment must satisfy the public concern requirement articulated in Connick. To hold otherwise could provoke judicial scrutiny to every institutional response to a comment. See Wilson v. State, 84 Wash.App. 332, 342-43, 929 P.2d 448 (1996). As we so recently held in White, the absence of a public concern in the exercise of a First Amendment right defeats a public employee's cause of action against a public employer under 42 U.S.C. § 1983. White, 131 Wash.2d at 20, 929 P.2d 396.
In the present case, the content of Smith's grievances cannot be characterized as involving matters of public concern. Accordingly, we do not need to scrutinize the reasons for her dismissal, see Connick, 461 U.S. at 146, 103 S.Ct. 1684, and hold the trial court properly dismissed Smith's claims against Bates and its employees under 42 U.S.C. § 1983.

CONCLUSION
As our prior case law has not clearly defined the scope of the common law tort of wrongful discharge in violation of public policy, we now expressly hold the common law tort is available to all employees without regard to whether an employee is terminable at-will or may be discharged only for cause. We also hold an employee need not exhaust contractual or administrative remedies before bringing an independent tort action for wrongful discharge in violation of public policy. Accordingly, we reverse the trial court's summary dismissal of Smith's wrongful termination claim and remand to the trial court for trial on this issue.
Although Smith's complaint alleges a violation of the petition clause of the First Amendment, we conclude a public employee states a claim under 42 U.S.C. § 1983 against a public employer for violation of First Amendment rights only if the employee's expression implicates a matter of public concern. Because Smith's grievances involved purely private matters, we affirm the trial court's dismissal of Smith's § 1983 claim.
SMITH, MADSEN, ALEXANDER, and IRELAND, JJ., concur.
JOHNSON, J., concurs in result.
TALMADGE, J. (concurring in part/dissenting in part).
I agree with the majority that Kelly Smith failed to establish a cause of action under 42 U.S.C. § 1983 against Bates Technical College and the individual defendants (Bates) for allegedly exercising her First Amendment rights because her expression to Bates related to a purely private concern. But I dissent on the issue of whether the common law tort of wrongful discharge in violation of public policy extends to employees like Smith, who have the protection of civil service laws or collective bargaining agreements and who may be terminated only for cause. The majority ignores the historical rationale for the tort and our case law in extending the cause of action beyond at-will employees. I would affirm the trial court's dismissal of Smith's complaint.
The majority correctly notes that under Washington common law, an employer could generally discharge an employee with or without cause absent an agreement or statutory system regulating the employment relationship to the contrary. Roberts v. Atlantic Richfield Co., 88 Wash.2d 887, 891, 568 P.2d 764 (1977). But an employer's absolute prerogative to discharge an employee is not unfettered. In fact, in recent years we have created certain exceptions to the terminable-at-will doctrine. For example, we joined most jurisdictions in recognizing a cause of action in tort for wrongful discharge in violation of a clear mandate of public policy. See Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984) (adopting this narrow exception because it properly balances the interest of both the employer and the employee). "The policy underlying the exception [to the terminable-at-will rule] *1148 is that the common law doctrine cannot be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy." Id. at 231, 685 P.2d 1081. Consequently, an employee has a common law cause of action in tort for wrongful discharge, even if the employee's service is at the will of the employer, if the discharge contravenes a clear mandate of public policy. See id. at 232, 685 P.2d 1081. In essence, this common law tort affords job security protections to employees who, unlike civil servants or employees subject to a collective bargaining agreement (CBA), may have no other remedy for arbitrary employer conduct.
We have applied this exception to the terminable-at-will rule only in cases where the public policy is clear.[1] In fact, in only a few cases have we found a violation of public policy. See, e.g., Gardner v. Loomis Armored, 128 Wash.2d 931, 950, 913 P.2d 377 (1996) (an armored truck driver's discharge for leaving the truck to save a woman from imminent death violated public policy, although such a holding did not invalidate the defendant's work rule regarding drivers leaving the truck). See also Bravo v. Dolsen Co., 125 Wash.2d 745, 758, 888 P.2d 147 (1995) (finding employer's discharge of nonunionized plaintiffs for engaging in "concerted activities" violated public policy); Bennett v. Hardy, 113 Wash.2d 912, 924-25, 784 P.2d 1258 (1990) (applying the Dicomes v. State, 113 Wash.2d 612, 782 P.2d 1002 (1989) whistleblowing analysis and finding the employer's alleged wrongdoingunlawful age discrimination together with the employee's reasonable response to the conduct, violated public policy). But see, e.g., Keenan v. Allan, 91 F.3d 1275, 1281 (9th Cir.1996) (although public policy encourages good faith reporting of improper governmental action, because the plaintiff failed to show causation or to rebut the defendant's proffer of an alternative "overriding justification" for her dismissal, the court found no public policy violation). See also Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 876 P.2d 435 (1994) (finding no violation of public policy (public safety) where the defendant failed to show he communicated his opposition to alleged violations of a certification procedure and he never personally refused to implement a company program violating "public policy").
The fundamental issue in this case is whether the common law tort of wrongful discharge extends to an employee who is terminable only for cause. Affirming the summary dismissal of Smith's wrongful discharge claim, the Court of Appeals noted this remedy is "`generally, if not exclusively, applied to employment at-will situations.'" Smith v. Bates Technical College, No. 19937-8-II, slip op. at 8, 1998 WL 275591, 91 Wash.App. 1008 (Wash.Ct.App. May 29, 1998) (quoting Micone v. Town of Steilacoom Civil Serv. Comm'n, 44 Wash.App. 636, 643 n. 2, 722 P.2d 1369 (1986)). See also Albright v. Department of Soc. & Health Servs., 65 Wash.App. 763, 829 P.2d 1114 (1992). Our prior decisions confirmed this. In Reninger v. Department of Corrections, 134 Wash.2d 437, 445, 951 P.2d 782 (1998), for example we stated:
DOC argues the doctrines of wrongful discharge or constructive wrongful discharge do not apply to employees who are not terminable at-will. Reninger and Cohen, given their civil service status, were not terminable at-will employees. Indeed, our case law has questioned the viability of such a tort where other relief is available to an affected employee. See, e.g., Micone v. Town of Steilacoom Civil Serv. Comm'n, 44 Wash.App. 636, 643 n. 2, 722 P.2d 1369 (questioning "whether the doctrine of constructive discharge even applies to employment governed by civil service rules"), review denied, 107 Wash.2d 1010 (1986); Albright v. State, 65 Wash.App. 763, 768-69, 829 P.2d 1114 (1992) (same).
134 Wash.2d at 445, 951 P.2d 782 (emphasis added). Furthermore, the United States District Court for the Eastern District of Washington observed: "the claim of `discharge in violation of public policy' exists only as a narrow exception to the at-will doctrine; there is no such claim in cause-only *1149 employment." Keenan v. Allan, 889 F.Supp. 1320, 1367 (E.D.Wash.1995), aff'd, 91 F.3d 1275 (9th Cir.1996). Similarly, in White v. State, 131 Wash.2d 1, 929 P.2d 396 (1997), we declined to extend the tort to include wrongful transfers and refused to subject each disciplinary decision of the employer to judicial scrutiny. "This is particularly true in instances like this one where an employee's rights are already protected by civil service rule, by collective bargaining agreement, and by civil rights statutes." Id. at 20, 929 P.2d 396.
Other jurisdictions have also adopted the view that the common law tort of wrongful discharge applies only to at-will employees. See Cullen v. E.H. Friedrich Co., 910 F.Supp. 815, 821 (D.Mass.1995) (under Massachusetts law, "[t]he cause of action [for wrongful discharge in violation of public policy] is only available to `at-will' employees"); Luethans v. Washington Univ., 894 S.W.2d 169, 173 (Mo.1995) ("a wrongful discharge action is only available to an employee-at-will"); Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp., 106 N.M. 19, 738 P.2d 513, 515 (1987) ("Obviously, if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable"); Phillips v. Babcock & Wilcox, 349 Pa.Super. 351, 503 A.2d 36, 38 (1986) ("[W]e hold that an action for the tort of wrongful discharge is available only when the employment relationship is at-will."); Hermreck v. United Parcel Serv., Inc., 938 P.2d 863, 867 (Wyo.1997) ("Where an employment contract is present, there does not exist any necessity for invoking a separate action for the tort of retaliatory discharge as to vindicate public policy."); Tomlinson v. Board of Educ., 226 Conn. 704, 730 n. 18, 629 A.2d 333, 347 n. 18 (1993) (because plaintiff is not an employee at-will, she "is not entitled to invoke the common law doctrine of wrongful discharge as a separate cause of action in tort."); and Stiles v. American Gen. Life Ins. Co., 335 S.C. 222, 516 S.E.2d 449 (1999) (Toal, J., concurring) (Wrongful discharge tort "is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."). Cf. Wilson v. City of Monroe, 88 Wash.App. 113, 121, 943 P.2d 1134 (1997), review denied, 134 Wash.2d 1028, 958 P.2d 318 (1998).
The majority largely overlooks this great weight of authority from around the United States and allows Smith a cause of action in tort for her allegedly wrongful discharge, even though the statutory and contractual remedies worked for her. The majority affords public employees greater protection than other workers in our state and provides significant disincentives for public employees to use the statutory and contractual mechanisms created for protection of their employment rights. Why use a CBA's arbitration clause or the Public Employment Relations Commission (PERC) when the majority permits a public employee to go to court?
In the final analysis, the common law tort of wrongful discharge in violation of public policy should be available only to persons who are terminable-at-will. This tort was designed to afford employees job security protection from employer actions in violation of public policy when those employees had no other viable protections in contract or at law; that is not the case here. For employees who have the extensive protection of civil service laws or CBAs, their job security is embodied in statutory "for cause" termination provisions and the negotiated job security of a CBA. Thus, Smith, as both a public employee and a union member, is protected administratively as well as through her negotiated CBA. RCW 28B.52.025; RCW 41.56.024. Indeed, Smith's CBA afforded her a swift, certain remedy in arbitration, which resulted in her restoration to employment, and back pay. Moreover, Smith still has unfair labor practice complaints pending before PERC, which has the authority to issue "appropriate remedial orders[.]" RCW 41.56.160(1). Furthermore, such orders are subject to considerable judicial deference. See Municipality of Metro. Seattle v. Public Employment Relations Comm'n, 118 Wash.2d 621, 826 P.2d 158 (1992).[2]
*1150 The majority finds that employees protected by civil service or CBAs may still seek the common law cause of action because the remedies afforded by an action in court may exceed those available through civil service or a CBA. Majority at 1141. This refrain from the majority was expressly rejected by this Court in Reninger in the context of an argument regarding the preclusive effect of administrative actions on subsequent court proceedings. The majority now tries to do by the back door what was not done in response to a more straightforward argument in Reninger.
The majority also believes that it can discern a clear violation of public policy here. Ordinarily, in determining whether a clear mandate of public policy has been violated, we consider "whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." Thompson, 102 Wash.2d at 232, 685 P.2d 1081 (quoting Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625, 631 (1982)). In Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 936, 913 P.2d 377 (1996), we established a framework for discerning a clear mandate of public policy. What constitutes such a clear mandate is a question of law. See Dicomes v. State, 113 Wash.2d 612, 617, 782 P.2d 1002 (1989).
We have generally allowed public policy tort actions in four situations: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation; (3) where employees are fired for exercising a legal right or privilege; and (4) where employees are fired in retaliation for reporting employer misconduct. See Gardner, 128 Wash.2d at 936, 913 P.2d 377 (quoting Dicomes, 113 Wash.2d at 618, 782 P.2d 1002). The touchstone of these exceptions is whether the employer's discharge violates some public rather than some private interest. See Dicomes, 113 Wash.2d at 618, 782 P.2d 1002 ("Although there is no precise line of demarcation dividing matters that are ... public ... from matters purely personal, ... a matter must strike at the heart of a citizen's social rights, duties, and responsibilities...") (quoting Palmateer v. International Harvester Co., 85 Ill.2d 124, 421 N.E.2d 876, 52 Ill.Dec. 13 (1981)).
The majority discerns a "clear mandate of public policy" from the very statute its opinion effectively undercuts. If the public policy mandate of CBAs and PERC is so clear, the majority should simply allow that public policy to be applied as the Legislature envisioned in Kelly Smith's case. Instead, the majority appears to suggest only the judiciary knows best.
Finally, in this case, the majority purports to short circuit the process created by the Legislature to determine if a violation of public policy has occurred. Thus, public employees need not exhaust either civil service or CBA remedies to determine if they were terminated "for cause." Rather, the courts now become available to any public employee claiming wrongful treatment. The courts are substituted for PERC or arbitrators under CBAs. This unfathomable extension of judicial power, heedless of any restraint, is not only unsupported in law, but also positively dangerous to public employers and employees. The expertise of PERC and labor arbitrators may be freely disregarded in favor of court actions before judges whose expertise in public labor law certainly is not as great. Again, we rejected this argument in Reninger only see it now revived by the majority without the slightest attention being paid to principles of stare decisis. See Reninger, 134 Wash.2d at 450, 951 P.2d 782.

CONCLUSION
Our prior case law on the scope of the common law tort of wrongful discharge in *1151 violation of public policy broadly hinted the tort is confined to at-will employment because civil service statutory protections and the provisions of CBAs appropriately protected employee job security. We should expressly hold the common law tort is available only to employees who are terminable-at-will, and affirm the trial court decisions in favor of Bates.
GUY, C.J., concurs.
NOTES
[1] RCW 41.56 provides statutory remedies for any alleged unfair labor practices by a state technical college employer. See RCW 41.56.140, 41.56.160. This statute also provides classified employees of Washington's technical colleges with the right to engage in union activity and to collectively bargain for rights and benefits beyond those provided by statute. See RCW 41.56.010, 41.56.122.
[2] According to Smith, Killion had been "very supportive of [her] and had written laudatory letters ... that had been placed in her personnel file." Pet. for Review at 4. After Killion was dismissed for poor performance in October 1993, Paul Jackson became Smith's supervisor. Jackson ultimately recommended Smith's dismissal.
[3] Although Bates' argument appears to find support in other jurisdictions, see, e.g., Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp., 106 N.M. 19, 738 P.2d 513, 515 (1987); Phillips v. Babcock & Wilcox, 349 Pa.Super. 351, 503 A.2d 36, 38 (1986), these cases are of limited value here. Citing its own state's authority, the Silva court explained: "The express reason for recognizing this tort, and thus modifying the terminable at-will rule, was `the need to encourage job security' for those employees not protected from wrongful discharge by an employment contract." Silva, 738 P.2d at 515 (quoting Vigil v. Arzola, 102 N.M. 682, 699 P.2d 613, 619 (Ct.App.1983), rev'd in part on other grounds, 101 N.M. 687, 687 P.2d 1038 (1984)). The Phillips court similarly recognized: "[T]he wrongful discharge cause of action was never intended to provide a forum to vindicate public policy and punish those who deviate from it." Phillips, 503 A.2d at 37. Rather, the Pennsylvania Supreme Court "was clearly concerned with the protection of `corporate personnel in the areas of employment not covered by labor agreements.'" Id. (quoting Geary v. U.S. Steel Corp., 456 Pa. 171, 181, 319 A.2d 174 (1974)). As Thompson clearly did not adopt the tort of wrongful discharge in violation of public policy in order to "encourage job security" or to protect personnel "not covered by labor agreements," we find these cases unpersuasive.
[4] The First Amendment guarantees "the right of the people ... to petition the government for a redress of grievances." U.S. Const. (amend.1).
[1] Public policy "`concerns what is right and just and what affects the citizens of the State collectively.'" Roberts v. Dudley, 92 Wash.App. 652, 659, 966 P.2d 377 (1998) (quoting Dicomes v. State, 113 Wash.2d 612, 618, 782 P.2d 1002 (1989)).
[2] This is not to say that an employee's civil service or CBA protections somehow forestall a cause of action specifically created by statute, For example, in Riccobono v. Pierce County, 92 Wash.App. 254, 265-66, 966 P.2d 327 (1998), the court held a county employee with civil service and collective bargaining remedies was entitled to sue for wrongful discharge under RCW 49.60, Washington's law against discrimination, without exhausting civil service or CBA remedies. Where the Legislature has created general statutory protections for employees, employees who are beneficiaries of civil service or CBA protection are still entitled to such remedies in court.