CADY, Chief Justice.
*613 A state administrative law judge (ALJ) was terminated shortly after giving unfavorable testimony about the director of her division to the Iowa Senate Government Oversight Committee. The ALJ, whose employment was covered by a collective bargaining agreement (CBA), brought a lawsuit against the State of Iowa, the division, and several named defendants, alleging, among other claims, wrongful termination in violation of public policy. The State moved to dismiss the claim, arguing the common law claim of wrongful discharge is reserved for at-will employees. The district court granted the State's motion. The ALJ appealed, and we transferred the case to the court of appeals. The court of appeals reversed, concluding contract employees may bring common law wrongful-discharge claims. We granted the State's application for further review. For the reasons set forth below, we find that retaliatory discharge claims are not categorically reserved for at-will employees.
I. Factual Background and Proceedings.
Under the procedural posture of this case, we accept the well-pleaded facts as the factual background to examine the legal issues presented on appeal. See Hedlund v. State , 875 N.W.2d 720, 722 (Iowa 2016).
Susan Ackerman served as an ALJ for the Iowa Workforce Development (IWD). She worked in the unemployment insurance appeals bureau. Ackerman began her service as an ALJ in 2000 and was covered by a CBA between the State of Iowa and the American Federation of State, County, and Municipal Employees. The CBA provided that employees may not be suspended, disciplined, or discharged without proper cause. The contract also protected employees from adverse employment actions taken in retaliation for whistleblowing. The agreement further provided for a grievance procedure.
In 2011, Teresa Wahlert was appointed as director of the IWD by a newly elected governor of Iowa. She subsequently terminated the bureau's chief ALJ and appointed Teresa Hillary and Devon Lewis as the lead workers of the bureau. Over time, Ackerman believed Wahlert, with the aid of Hillary and Lewis, engaged in systematic efforts to pressure the ALJs in the bureau and other employees to render decisions favorable to employers. She also believed that judges who failed to render decisions favorable to employers were subjected to harassment.
In August 2014, Ackerman was subpoenaed to testify about her beliefs and observations before the Iowa Senate Government Oversight Committee. At the hearing, she testified about a hostile work environment and the pressure she perceived by Wahlert to issue decisions in favor of employers. She said she felt powerless to stop Wahlert from improperly influencing the decisions issued by the bureau.
In December 2014, Wahlert suspended Ackerman, pending an investigation into allegations of misconduct. Ackerman believed that the allegations were baseless and that her suspension was done in retaliation for providing truthful testimony to the senate committee.
In January 2015, Ackerman was terminated from her employment. She subsequently filed a lawsuit against IWD, Wahlert, Hillary, and Lewis. In her petition, she alleged the defendants (1) retaliated against her for disclosing information to public officials in violation of Iowa Code section 70A.28 (2015); (2) defamed her; (3) intentionally interfered with contractual relations; (4) breached the State of Iowa's *614 Manager and Supervisors Manual, of which she is a third-party beneficiary; (5) disclosed confidential personnel records in violation of Iowa Code section 22.7 ; (6) violated her constitutional rights under the First Amendment; (7) intentionally inflicted emotional distress, and (8) wrongfully discharged her in violation of public policy.
The defendants subsequently moved to dismiss the common law retaliatory discharge claim in count VIII. The defendants solely argued that the claim is reserved for at-will employees, and because Ackerman's employment was covered by a CBA, she could not bring the claim. The district court agreed and dismissed the claim, concluding "[t]o the extent that the agreement provides for a remedy relating to wrongful discharge, Plaintiff is not allowed to apply the narrow exception Iowa courts have reserved for at-will employment to her current situation."
Ackerman appealed and the court of appeals reversed. The court explained that although the common law action of retaliatory discharge is available to at-will employees and indeed has been recognized as an exception to the at-will employment doctrine, such availability does not categorically foreclose recognizing the tort for contract employees. The court found the tort was adopted to protect those with a compelling need for protection from wrongful or retaliatory discharge, and CBA-covered employees indeed require such protection. Accordingly, the court concluded that Ackerman's status as a CBA-covered employee did not preclude her wrongful-discharge claim. We granted defendants' application for further review.
II. Standard of Review.
We review district court orders "granting a motion to dismiss for correction of errors at law." Berry v. Liberty Holdings, Inc. , 803 N.W.2d 106, 108 (Iowa 2011). In reviewing the order, "[w]e view the petition in the light most favorable to the plaintiff, and will uphold dismissal only if the plaintiff's claim could not be sustained under any state of facts provable under the petition." Id. (alteration in original) (quoting Griffen v. State , 767 N.W.2d 633, 634 (Iowa 2009) ).
III. Analysis.
A. Development of Common Law. The resolution of this case ultimately rests upon "our duty to develop and announce the common law" when resolving disputes. Thompson v. Stearns Chem. Corp. , 345 N.W.2d 131, 134 (Iowa 1984). This body of law is derived from the principles, traditions, and practices developed by courts through the process of justice and allows the civil law to grow and change from one generation to the next in response to changes observed in the needs and values of society. In many ways, the process is part of the foundation of the work of courts in our democratic society and one of the most important components of the legal process itself.
B. Development of the Retaliatory Discharge Tort. Thirty years ago, we utilized our authority to recognize the common law tort of retaliatory discharge in violation of public policy in Springer v. Weeks & Leo Co. , 429 N.W.2d 558, 560-61 (Iowa 1988). In Springer , an at-will employee was discharged from her employment for pursuing a workers' compensation claim against her employer. Id. at 559. While our laws at the time had developed a remedy for tortious interference with a contractual relationship, no remedy existed to protect at-will employees, even from discharge based on reasons that violated or frustrated a well-recognized and defined public policy of our state. Id. at 561. In the absence of such a remedy, we adopted a *615 cause of action for tortious termination in violation of public policy. Id.
In Springer , we found that our state recognized a public policy for workers to seek compensation for work-related injuries. Id. at 560. This policy was clearly expressed in the workers' compensation statute, and the absence of a remedy for at-will employees for discharge in retaliation for pursuing these rights would frustrate and undermine this well-defined policy. Id. at 560-61. We acknowledged that contract employees ordinarily have adequate remedies, but did not specifically restrict the new tort to noncontract employees. Id. at 561 n.1.
On the heels of Springer , we were presented with the question in Conaway v. Webster City Products Co. , 431 N.W.2d 795, 797 (Iowa 1988), whether a claim by a CBA-covered employee for retaliatory discharge for filing a workers' compensation claim was preempted by the Labor Management Relations Act. The CBA at issue contained a "grievance and arbitration procedure to settle disputes, including those involving employees' discharges." Id. at 796. We held the claims were not preempted by the Act and that the plaintiffs did not need to exhaust the procedures under the CBA before proceeding to state court on its claims. Id. at 799-800. Without specifically addressing whether the newly recognized tort of retaliatory discharge was available to contract employees, we recognized that the claim for retaliatory discharge brought by the employees was independent of the CBA. Id. at 800. We concluded that the claims were "recognizable state tort claims." Id. Accordingly, while the plaintiffs in the case were not at-will employees, we made no suggestion that the new tort was not available to them.
Since Springer and Conaway , our cases that have examined the retaliatory discharge tort have largely focused on the search for a well-defined public policy to support the application of the tort beyond the circumstances of retaliation for filing for workers' compensation benefits. Generally, these cases have expanded the tort into four categories of protected activity. See Jasper v. H. Nizam, Inc. , 764 N.W.2d 751, 762 (Iowa 2009) ("[O]ur wrongful-discharge cases that have found a violation of public policy can generally be aligned into four categories of statutorily protected activities: (1) exercising a statutory right or privilege; (2) refusing to commit an unlawful act; (3) performing a statutory obligation; and (4) reporting a statutory violation." (Citations omitted.) ). One general category includes retaliatory discharge for performing a statutory obligation, such as providing truthful testimony. Id. In Fitzgerald v. Salsbury Chemical, Inc. , 613 N.W.2d 275, 286 (Iowa 2000), we recognized a clear public policy in Iowa to provide truthful testimony in legal proceedings. In turn, we found the policy supported a tort claim based on retaliation for intending to testify in a lawsuit against an employer. Id. Thus, most of our attention to the continuing development of this tort has focused on the identification of the public policy to support the tort and on whether the discharge undermined the policy. Generally, these are questions of law for courts to decide. Id. at 282.
C. Whether Contract Employees May Bring Common Law Retaliatory Discharge Claims. The sole question presented to the district court and raised on appeal is one of first impression: whether the tort of wrongful discharge in violation of public policy is categorically reserved for at-will employees, such that a contract employee may not state a claim.
Since Springer and Conaway , we have considered many retaliatory discharge *616 claims brought by at-will employees. While engaging in our public-policy analysis, we have frequently described the remedy for retaliatory discharge as an exception to the at-will employment doctrine. See Jones v. Univ. of Iowa , 836 N.W.2d 127, 144 (Iowa 2013) (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as "an exception to Iowa's general rule that employment is at-will"); Dorshkind v. Oak Park Place Dubuque II, L.L.C. , 835 N.W.2d 293, 300 (Iowa 2013) (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as "a public-policy exception to the general rule of at-will employment"); Berry , 803 N.W.2d at 109 (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as "a narrow public-policy exception to the general rule of at-will employment"); Ballalatak v. All Iowa Agric. Ass'n, 781 N.W.2d 272, 275 (Iowa 2010) (same); Jasper , 764 N.W.2d at 762 (same); Theisen v. Covenant Med. Ctr., Inc. , 636 N.W.2d 74, 79 (Iowa 2001) (same); Fitzgerald , 613 N.W.2d at 281 (same); Huegerich v. IBP, Inc. , 547 N.W.2d 216, 220 (Iowa 1996) (same); Anderson v. Douglas & Lomason Co. , 540 N.W.2d 277, 282 (Iowa 1995) (assessing whether the employee was at will and describing retaliatory discharge claims as a "narrow deviation[ ]" from the general at-will employment doctrine); Niblo v. Parr Mfg., Inc. , 445 N.W.2d 351, 352 (Iowa 1989) (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as a "public policy exception").
The defendants now use this tendency to support their position that the tort was never intended to apply to employees other than at-will employees who otherwise would have no remedy. The court of appeals rejected this argument as invalid deductive reasoning.[1]
Additionally, we have not exclusively characterized the tort as an exception to the at-will employment doctrine. See, e.g. , Teachout v. Forest City Cmty. Sch. Dist. , 584 N.W.2d 296, 299 (Iowa 1998) ("Even an employee at will , however, may not be terminated for a reason contrary to public policy." (Emphasis added.) ); Sanford v. Meadow Gold Dairies, Inc. , 534 N.W.2d 410, 412 (Iowa 1995) ("Sanford's retaliatory discharge claim rests on our holdings that public policy is violated when an employee, even an employee at-will , is discharged as a result of seeking workers' compensation benefits." (Emphasis added.) ).
While a right given to benefit one group would not necessarily exclude other groups to the right, the "life of the law," as observed by Chief Justice Oliver Wendell Holmes, "has not been logic, it has been experience." State v. Baldon , 829 N.W.2d 785, 829 (Iowa 2013) (Appel, J., concurring) (quoting Oliver Wendell Holmes, The Common Law 1 (1881) ). It is not the product of deductive reasoning, but the accumulations of those choices made by the democratic process of government, including the courts, to guide society over time. As a result, if experience reveals that a right created with one segment of society in mind should extend to others in society, the law must respond. Accordingly, our prior characterization of the retaliatory discharge tort as an exception to the at-will employment doctrine does not confine its common law development or serve as a limitation into the future. Furthermore, it *617 does not bind us to a principle of law applicable to the resolution of this case under the doctrine of stare decisis. Thus, having developed this tort in light of the experiences of our prior cases, we now consider whether it applies to contract employees too.
First, it is important to observe that the purpose of the common law claim of retaliatory discharge is distinct from the purpose of a claim of breach of contract. Contract claims seek to redress the private interests and individual promises of the parties. Retaliatory discharge claims, however, enforce "the communal conscience and common sense of our state in matters of public health, safety, morals, and general welfare." Jasper , 764 N.W.2d at 761. As opposed to merely vindicating the private interests of the parties, wrongful-discharge claims vindicate the greater harm to society when an employee is punished for acting in accordance with a clear public policy.
In Keveney v. Missouri Military Academy , the Missouri Supreme Court found the tort of wrongful discharge applies to contract employees as well as at-will employees. 304 S.W.3d 98, 103 (Mo. 2010) (en banc). The court noted that "limiting the wrongful discharge cause of action to at-will employees fails to recognize the distinct underlying purpose of the wrongful discharge cause of action." Id. at 102. Whereas a contract claim "enforces privately negotiated terms and conditions of employment," a retaliatory discharge claim "is premised on a conflict between the conditions of employment and constitutional, statutory, or regulatory provisions that are applicable irrespective of the terms of contractual employment." Id. Further, the discharge underlying the tort is "not 'wrongful' because it violates the contractual terms of employment," but rather because it is "based on the employer's attempt to condition employment on the violation of public policy." Id.
In Gonzalez v. Prestress Engineering Corp. , the Illinois Supreme Court affirmed the availability of a wrongful-discharge claim for CBA-covered employees. 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308, 313-14 (1986). The court noted the tort "claims asserted arise under the clear mandate of Illinois public policy, which exists independent of any privately negotiated contract rights or duties." Id. 104 Ill.Dec. 751, 503 N.E.2d at 313. Indeed, a union employee need not exhaust grievance procedures before asking a court to resolve "a nonderivative State tort action firmly rooted in an important public policy which 'proscribe[s] conduct, [and establishes] rights and obligations, independent of a labor contract.' " Id. (alterations in original) (quoting Allis-Chalmers Corp. v. Lueck , 471 U.S. 202, 212, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) ).
In Retherford v. AT & T Communications of the Mountain States, Inc. , the Utah Supreme Court similarly extended retaliatory discharge claims to contract employees. 844 P.2d 949, 960 (Utah 1992). The court noted the "primary purpose behind giving employees a right to sue for discharges in violation of public policy is to protect the vital state interests embodied in such policies," and found that it "cannot fulfill such a purpose if [it] hinge[s] this cause of action on employees' contractual status and thus limits its availability to any one class of employees." Id. In short, a retaliatory discharge claim "differs in both scope and sanction from any contractual provision that might limit an employer's power to discharge an employee for other than just cause." Id. at 959. The distinct purposes of tort and contractual claims support extending the tort to contract employees who seek to vindicate not only their own interests, but also the greater *618 interests of society in guaranteeing that vital policies are not undermined by employer misconduct.
Second, when an employee is discharged in violation of public policy, the employer commits a wrong both in contract and in tort. "[W]here a duty recognized by the law of torts exists between the plaintiff and defendant distinct from a duty imposed by the contract ... a tort action [will] lie for conduct in breach of the contract." Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. , 452 N.W.2d 389, 397 (Iowa 1990). Employers have a duty to refrain from acting in contravention of established public policies, and the tort of retaliatory discharge ensures that employees are not impermissibly sanctioned for exercising guaranteed rights. This duty to refrain from retaliatory discharge is independent of the duty to uphold the bargained-for terms of employment.
In Byrd v. VOCA Corp. of Washington, D.C. , the District of Columbia Court of Appeals held contract employees may bring retaliatory discharge claims. 962 A.2d 927, 934 (D.C. 2008). The court found that "[d]enying contract workers the public policy wrongful discharge remedy tends to 'ignore[ ] the fundamental distinction between tort and contract actions.' " Id. (second alteration in original) (quoting Smith v. Bates Tech. Coll. , 139 Wash.2d 793, 991 P.2d 1135, 1141 (2000) (en banc) ). The court explained, "The duty giving rise to the tort remedy is not derived from the covenants of contract, but rather from the employer's obligation to conduct its affairs in conformity with fundamental public policy." Id.
Importantly, retaliatory discharge is an intentional tort. Jasper , 764 N.W.2d at 769. Nowhere in our law does a contractual employee surrender, by virtue of signing an employment contract, the right to bring a claim for tortious conduct that harms not only the employee, but also the state's clear public policy.
Finally, the existence of contract remedies does not preclude the extension of the tort to contract employees. In jurisdictions that have declined to permit contract employees to bring retaliatory discharge claims, courts have generally found that existing contract remedies are sufficient and obviate the need for the common law claim. See, e.g. , Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp. , 106 N.M. 19, 738 P.2d 513, 515 (1987) ("Obviously, if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable."); Phillips v. Babcock & Wilcox , 349 Pa.Super. 351, 503 A.2d 36, 38 (1986) ("[W]e find that a difference in remedies is not enough to justify an extension of the coverage of the wrongful discharge action."); Hermreck v. United Parcel Serv., Inc. , 938 P.2d 863, 866 (Wyo. 1997) ("[W]hen another remedy exists to redress the violation of social policy that resulted in the employee's discharge, then no need exists for a court imposed separate tort action premised on the violation of public policy."). The United States Court of Appeals for the Eighth Circuit has joined in this line of cases and further predicted that we would not allow contract employees to bring retaliatory discharge claims partially on this basis. See Hagen v. Siouxland Obstetrics & Gynecology, PC , 799 F.3d 922, 928-30 (8th Cir. 2015).
Yet, these cases overlook the discrete rationales underlying contract and tort remedies. "If an employee is discharged for refusing to violate a public policy requirement, a breach of contract action satisfies private contractual interests but fails to vindicate the violated *619 public interest or to provide a deterrent against future violations." Keveney , 304 S.W.3d at 103. When an employer's adverse action "violate[s] not only the employment contract but also clear and substantial public policy, the 'employer is liable for two breaches, one in contract and one in tort.' It follows that the employer must bear the consequences of its actions." Id. (quoting Retherford , 844 P.2d at 960 ). Indeed, when an employee is wrongfully discharged, "society is equally aggrieved whether the employee is 'at will' or can be discharged only for 'just cause.' " Davies v. Am. Airlines, Inc. , 971 F.2d 463, 469 (10th Cir. 1992) (applying Oklahoma law).
In Coleman v. Safeway Stores, Inc. , the Kansas Supreme Court overturned its previous cases that limited retaliatory discharge claims to at-will employees. 242 Kan. 804, 752 P.2d 645, 651 (1988). In three prior cases, the court had instructed that CBA-covered employees had "an adequate remedy and [did] not need the protection afforded at-will employees." Id. at 649. Yet, upon review, the court recognized its error and found that its prior "cases stand for the disturbing proposition that an employee subject to a collective bargaining contract surrenders state tort remedies which were neither included in the bargaining process nor intended by the parties to be a part of the contract." Id. (emphasis added). Moreover, the court found its prior decisions effectively granted "employers with collective bargaining contracts [immunization] from accountability for violations of state public policy." Id.
In Retherford , the Utah Supreme Court explained "the vindication of public policy worked by the tort cause of action cannot be accomplished by a contractual provision that prohibits discharges for any but just cause." 844 P.2d at 960. Contract remedies "satisfy only the private interests of the parties to the agreement," whereas retaliatory discharge remedies "are designed not only to remedy the breach and make the employee whole, but to deter and punish violations of vital state interests." Id. An employer who tortiously fires an employee in contravention of an established public policy "should be liable for the more expansive penalties of tort, a potentially harsher liability commensurate with the greater wrong against society." Id. Given the multiple harms caused by the employer's adverse action, the court saw "no reason to dilute the force of the double sanction." Id.
In Norris v. Hawaiian Airlines, Inc. , the Supreme Court of Hawaii similarly extended retaliatory discharge claims to contract employees due to the necessity of imposing tort remedies. 74 Haw. 235, 842 P.2d 634, 647 (1992). The court noted that the CBA at issue, like many CBAs, limited recovery to reinstatement and back wages. Id. Tort damages, however, may include
special damages, which compensate claimants for specific out of pocket financial expenses and losses, general damages for pain, suffering, and emotional distress, and punitive damages assessed for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter defendant and others from similar conduct in the future.
Id. (citation omitted). The court "conclude[d] that the wide disparity between the remedies available under the CBA and the damages potentially recoverable in a state tort action" supported allowing CBA-covered employees to bring the tort claim. Id. ; see also Dunwoody v. Handskill Corp. , 185 Or.App. 605, 60 P.3d 1135, 1141 (2003) ("Given the limited nature of her contract and the substantial divergence between what she is entitled to recover under the *620 two different theories, plaintiff's contract remedies are not adequate.").
In Keveney , the Missouri Supreme Court found "it is inconsistent to allow an at-will employee to pursue an action for wrongful discharge while denying a contract employee the same right." 304 S.W.3d at 103. The court explained that "[a]llowing an at-will employee to pursue an action for wrongful discharge 'illogically grants at will employees greater protection from these tortious terminations due to an erroneous presumption that the contractual employee does not need such protection.' " Id. (quoting Smith , 991 P.2d at 1141 ).
Retaliatory discharge "in violation of public policy is an intentional tort." Jasper , 764 N.W.2d at 769. Accordingly, the tort's remedies cover
the complete injury, including economic loss such as wages and out-of-pocket expenses, as well as emotional harm. Emotional harm is a personal injury, and economic loss constitutes property damage. Thus, both personal injury and property damage are recoverable.
Id. at 769-70 (citation omitted). If a retaliatory discharge "is committed with either actual or legal malice," a plaintiff may seek punitive damages. Id. at 773. Thus, at-will employees would indeed receive "greater protection" if contract employees could not bring the claim. Keveney , 304 S.W.3d at 103.
Under the defendants' view, wrongfully terminated CBA-covered employees already have an adequate remedy, as they may enforce the CBA's "just cause" provision. However, we agree with all of the above jurisdictions that it is incongruous for some employers to be subject to deterrent damages for wrongfully discharging an employee, while other employers are immunized from deterrent damages simply because they wrongfully terminated a contract, rather than an at-will, employee. The rationales for awarding punitive damages-punishment and deterrence-are no less compelling when an employer conditions a contract employee's employment on a violation of a clearly established public policy.
When adopting the retaliatory discharge tort in Springer , we indeed relied, in part, on an at-will employee's need for protection from improper interferences with employment. 429 N.W.2d at 561. Yet, we also relied on the need to guard against the undermining of legislative principles and schemes by employers who may "abuse their power to terminate by threatening to discharge employees for" acting in accordance with declared public policies. Id. (quoting Kelsay v. Motorola, Inc. , 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 357 (1978) ). Allowing contract employees to bring retaliatory discharge claims ensures that employers are not only held accountable to the wronged employee through contract damages, but are also deterred from future misconduct that is contrary to legislative schemes through tort damages.
In predicting that we would not allow contract employees to bring a retaliatory discharge tort, the court in Hagen relied on our holding in Harvey v. Care Initiatives, Inc. , 634 N.W.2d 681, 684 (Iowa 2001), that an independent contractor of a nursing home could not bring a claim for retaliatory discharge against public policy. Hagen , 799 F.3d at 930. In Harvey , an independent contractor was terminated after filing a complaint against a nursing home. 634 N.W.2d at 682-83. While we observed the distinctions between employees and independent contractors in Harvey , including the disparate bargaining position that normally leaves at-will employees without a remedy, we did not refuse to extend the tort to independent contractors based on the expectations that *621 they would have contract protections. Id. Instead, we found the statute used by the independent contractor in Harvey to establish the protected activity to support the tort in the case only extended to nursing home residents and employees of nursing homes. Id. at 685-86. Thus, the independent contractor could not establish the critical public policy element of the tort that protected independent contractors in engaging in the activity that resulted in the discharge. Id. at 686. In fact, we concluded that the tort remedy first recognized in Springer would have applied to the independent contractor in Harvey if the statute that prohibited discharge for filing a complaint had been written more broadly to cover independent contractors. Id. at 685.
Likewise, in New Horizons Electronics Marketing, Inc. v. Clarion Corp. of America , the Appellate Court of Illinois considered whether independent contractors may bring retaliatory discharge claims. 203 Ill.App.3d 332, 149 Ill.Dec. 5, 561 N.E.2d 283, 285 (1990). In Illinois, both at-will and contract employees may bring retaliatory discharge claims. Id. ; see also Midgett v. Sackett-Chi., Inc. , 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280, 1283 (1984) (finding that "in order to provide a complete remedy it is necessary that the victim of a retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement"). However, the court noted that, despite expansion beyond the at-will context, the court had not "expanded the tort outside of the employment setting." New Horizons Elecs. Mktg. , 149 Ill.Dec. 5, 561 N.E.2d at 285. The court explained the tort of retaliatory discharge is premised
on the recognition that "employer and employee do not stand on equal footing," and a proper balance must be maintained among the employee's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood and society's interest in seeing its public policies carried out.
Id.
While the absence of a remedy to correct a wrong was an important factor in creating the tort for retaliatory discharge thirty years ago, it does not drive us so much in deciding whether to extend the tort to contract employees today. Instead, we are driven by other factors, such as ensuring that victims of intentional torts are fully compensated and that legislative schemes and public policy are not undermined. Accordingly, we hold contract employees may bring common law claims alleging wrongful termination in violation of public policy.
D. Effect of Ackerman's Statutory Remedy. Although we find that contract employees, generally, may bring retaliatory discharge claims, Ackerman's specific claim is not so easily resolved. Extending the tort to CBA-covered employees ensures the victim of an intentional tort is fully compensated and legislative schemes are not undermined. However, Ackerman is not a private contract employee, but rather a state employee who is aided by the additional safeguard of a statutory claim.
Iowa Code section 70A.28 provides a direct cause of action for state employees who suffer adverse employment actions in retaliation for whistleblowing. Iowa Code § 70A.28. The statute permits a wronged employee to seek "affirmative relief including reinstatement, with or without back pay, or any other equitable relief the court deems appropriate, including attorney fees and costs." Id. § 70A.28(5)(a ). Ackerman therefore is already provided additional tort remedies for a purportedly wrongful termination in retaliation for whistleblowing *622 and indeed brought a claim under section 70A.28 in her petition.
On appeal, the defendants recognized Ackerman's statutory remedies and, for the first time on further review, argued that we should find section 70A.28 to be exclusive, such that Ackerman is precluded from raising a common law claim. The defendants now urge us to look to Van Baale v. City of Des Moines , which found that chapter 400 is an exclusive remedy and therefore civil service employees may not bring separate common law retaliatory discharge claims. 550 N.W.2d 153, 155-56 (Iowa 1996), abrogated on other grounds by Godfrey v. State , 898 N.W.2d 844, 872 (Iowa 2017). Section 70A.28 does not expressly declare that its remedies are the exclusive vehicle for state employees to recover for a wrongful discharge in retaliation for whistleblowing. The question, then, of whether Ackerman's remedies under section 70A.28 are adequate, such that she is impliedly precluded from bringing a common law claim, is one of statutory interpretation.
Here, defendants failed to raise this issue at the district court and, instead, exclusively argued retaliatory discharge claims are categorically reserved for at-will employees. This is the issue we decide. The preclusive effect, if any, of section 70A.28 has not been properly litigated and raised on appeal and is therefore beyond our reach. Accordingly, we remand the case to the district court for further resolution of Ackerman's claim.
IV. Conclusion.
We hold that the common law tort of retaliatory discharge against public policy is generally available to contract employees. We affirm the decision of the court of appeals, reverse the decision of the district court, and remand for further proceedings.
DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.
All justices concur except Waterman and Mansfield, JJ., who dissent.

The court of appeals aptly described defendants' argument as "commit[ting] the fallacy of the inverse (otherwise known as denying the antecedent): the incorrect assumption that if P implies Q, then not-P implies not-Q." NLRB v. Noel Canning , 573 U.S. ----, ----, 134 S.Ct. 2550, 2603, 189 L.Ed.2d 538 (2014) (Scalia, J., concurring).