OPINION OF THE COURT BY JUSTICE VANMETER
*570 For a party to be liable for tortiously interfering with a contractual relationship, said party must intentionally and improperly interfere with another's existing or prospective contractual relation. The issue before this Court today is whether a parent company may be held liable for tortious interference with a contractual relationship between its wholly-owned subsidiary and a third party. By following our adherence to the Restatement (Second) of Torts (1979) on this issue, we hold that a parent company has a qualified privilege to interfere with the contractual relations of its wholly-owned subsidiary unless it employs wrongful means, or its interference is not in the economic interest of the subsidiary. Accordingly, we affirm.
I. Factual and Procedural Background.
Keith Sparkman, doing business as the sole proprietor of In-Depth Sanitary Services Group ("Sparkman"), entered into several business arrangements to provide janitorial services at the "Jones Fork," "Mill Creek," and "Slope Mine" mining operations of CONSOL of Kentucky, Inc. ("CKI"). CKI is the wholly-owned subsidiary of CONSOL Energy, Inc. ("Energy"). In late 2004, Sparkman hired Amy Little on to his cleaning crew. In February 2005, two of Sparkman's contracts were cancelled prior to their natural expiration. The original termination letter did not give a reason for the termination of the contracts. On March 1, 2005, a day after the termination of two of Sparkman's contracts, Little was hired to take over the janitorial duties at both operations. Sparkman's final contract was terminated in June 2005, after he was deemed a security risk for attempting to record multiple conversations with CKI and Energy employees. In the final termination letter, Craig Campbell, a human resources supervisor, stated that the initial two contracts were terminated due to Sparkman's "failure to satisfactorily perform his work and failure to correct the deficiencies after notice of the same."
In 2006, Sparkman brought suit against CKI, Energy, three employees at the operations where Sparkman had contracts, and Little. The case was tried in 2009 on three separate claims. First, Sparkman had two year-to-year contracts and one month-to-month contract, and Sparkman alleged that CKI breached the contracts by terminating them early without cause. The jury decided for Sparkman on this claim and awarded him $ 34,500. The second claim was that CKI interfered with the contractual relation between Little and Sparkman. CKI received a directed verdict on this issue at trial.[1]
Lastly, Sparkman claimed that Energy interfered with the contractual relationship between Sparkman and CKI by terminating his contracts and giving them to Little at the request of Clell Scarberry, a mine foreman, who was having an extramarital affair with Little.[2] This claim survived a directed verdict motion at trial, and the jury found for Sparkman on the issue, awarding him $ 678,000 for tortious interference, *571 pain and suffering, and punitive damages. The trial court denied Energy's JNOV motion, and after an initial appeal resulted in a reversal on a procedural issue, this Court remanded to have the Court of Appeals review the issues on the merits. On remand, the Court of Appeals opined that a parent company cannot tortiously interfere with a wholly-owned subsidiary unless it employs wrongful means when interfering. Further, the Court of Appeals held that the affair between Little and Scarberry, and Scarberry's request to move the contract from Sparkman to Little did not amount to wrongful means, and therefore, Energy was privileged to interfere.[3] This appeal followed.
II. Standard of Review.
When a denial of a JNOV motion is appealed,
we are to affirm unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ. Likewise, the trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it appears that there has been an abuse of discretion.
Storm v. Martin, 540 S.W.3d 795, 800 (Ky. 2017) (citation omitted).
III. Analysis.
The issue we must ultimately decide is whether a parent corporation has the authority to interfere with its wholly-owned subsidiary's contracts. This Court has always followed the Restatement (Second) of Torts (1979) approach to tortious interference claims. See Nat'l Collegiate Athletic Ass'n v. Hornung, 754 S.W.2d 855, 857 (Ky. 1988) (finding that the Restatement (Second) "fairly reflect[s] the prevailing law of Kentucky[ ]"). Section 769 of the Restatement (Second) of Torts provides that a third party who has a financial interest in the business of another may interfere with the contractual relations of that business if he "(a) does not employ wrongful means and (b) acts to protect his interest from being prejudiced by the relation."
Although an issue of first impression in the Commonwealth, several jurisdictions have decided the issue before us today. In Waste Conversion Sys., Inc. v. Greenstone Indus. Inc., 33 S.W.3d 779, 780 (Tenn. 2000), the Supreme Court of Tennessee held that a parent corporation has the privilege to interfere in the contracts of its wholly-owned subsidiary unless it (1) employs wrongful means or (2) acts contrary to its subsidiary's interests. See, e.g., Boulevard Assoc. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1036 n.3 (2d Cir. 1995) (finding that courts have "uniformly found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform," but recognizing an exception when the plaintiff proves improper motive or improper means); Phil Crowley Steel Corp. v. Sharon Steel Corp., 782 F.2d 781, 783 (8th Cir. 1986) (Missouri law dictated that a parent corporation may interfere with its subsidiary's contractual relations unless the parent employs wrongful means or acts for an improper purpose);
*572 MGP Ingredients, Inc. v. Mars, Inc., 465 F.Supp.2d 1109, 1115 (D. Kan. 2006) ("parent corporation cannot be held liable for tortious interference when it directs its wholly-owned subsidiary to breach a contract that [ ] is no longer in the subsidiary's economic interest to perform unless the parent corporation employs wrongful means or acts with an improper purpose[ ]"); T.P. Leasing Corp. v. Baker Leasing Corp., 293 Ark. 166, 732 S.W.2d 480, 483 (1987) ("a parent corporation's privilege permits it to interfere with another's contractual relations when the contract threatens a present economic interest of its wholly owned subsidiary, absent clear evidence that the parent employed wrongful means or acted with an improper purpose[ ]").
Based on the weight of authority in other jurisdictions and this Court's adherence to the Restatement (Second) of Torts on this issue, we hold, as a matter of law, that a parent corporation has a privilege to interfere in the contractual relations of its wholly-owned subsidiary, unless it employs wrongful means or acts contrary to its subsidiary's interests.[4] Furthermore, in following the Tennessee approach, the burden is on the plaintiff to prove wrongful means. Waste Conversion Sys., 33 S.W.3d at 780. Based on the evidence the plaintiff set forth at trial, we must now determine whether Clell Scarberry's affair with Amy Little, which allegedly led to the subsequent termination of Sparkman's contract, constitutes wrongful means.
Wrongful means is "defined to include acts which are wrongful in and of themselves, such as misrepresentations of facts, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or common law." Id. at 784 (citations omitted); see also Restatement (Second) of Torts § 769 cmt. d (referring back to wrongful means stated in § 767 cmt. c, which include physical violence, misrepresentation, prosecution of civil suits, criminal suits, violations of recognized ethical codes, and other unlawful conduct). Even following Sparkman's theory at trial-an alleged affair and a favor to an employee's girlfriend-none of Energy's acts constituted "wrongful means" as contemplated by the Restatement and other jurisdictions. At most, Energy's employees' interference with CKI's contracts was in an attempt to benefit Little, not harm Sparkman. Furthermore, the other reasons Sparkman gives for why wrongful means were employed-veiled threats by Energy employee, Jimmy Childers, and the "pretextual" reasons in the June termination letter for terminating his original two contracts-occurred after his first two contracts were terminated and cannot be used to establish acts constituting wrongful means as to the alleged interference with previously terminated contracts.
IV. Conclusion.
This Court has never strayed from the Restatement (Second) of Torts when analyzing tortious interference claims and does not elect to do so today. When alleging tortious interference on the part of a parent corporation with its wholly-owned subsidiary, the plaintiff has the burden of showing that the parent employed wrongfu *573 l means or acted contrary to its subsidiary's interest. An alleged affair and a favor to an employee's girlfriend do not equate to wrongful means. Therefore, at trial, Sparkman adduced no proof as to the required element of wrongful means in a tortious interference claim involving a parent and its wholly-owned subsidiary. Accordingly, we affirm the Court of Appeals.
Minton, C.J.; Hughes, Keller, and VanMeter, JJ., concur. Lambert, J., concurs in result only. Buckingham, J., not sitting. Wright, J., dissents by separate opinion.

Sparkman does not present any argument before us concerning the trial court's directed verdict on this issue.

Scarberry and Little had married by the time of trial, so some references to her in the record refer to an "Amy Scarberry."

The Court of Appeals also held that CKI breached the contracts it held with Sparkman. Since the Court of Appeals decision, CKI has paid the breach of contract damages and does not appeal that decision.

Energy urges us to follow Kamdem-Ouaffo v. Task Mgmt. Inc., which held that a tortious interference claim could not be brought against Task Management because it was a party to the contract. No. 1:17-cv-7506 (NLH/JS), 2018 WL 3360762, at *23 (D. N.J. July 9, 2018). However, the plaintiff in Task Management signed an agreement directly with Task Management. Therefore, notwithstanding Judge Hillman's well-written, cogent analysis, this case does not apply to our analysis of whether a parent corporation may interfere in the contractual relations of its subsidiary.