# IN THE COURT OF APPEALS OF IOWA

No. 18-0615
Filed July 3, 2019


**ESTATE OF JOSHUA NAEVE, BY ITS ADMINISTRATORS, THAD NAEVE and NANCYE NAEVE, THAD NAEVE, INDIVIDUALLY, and NANCYE NAEVE, INDIVIDUALLY,**
 Plaintiff-Appellants,

**vs.**

**FBL FINANCIAL GROUP, INC.,**
 Defendant-Appellee.

_____


 Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


 Appellants appeal a district court order granting FBL Financial Group, Inc.'s motion to dismiss appellants' civil petition at law. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**



 Bruce H. Stoltze of Stoltze & Stoltze, PLC, Des Moines, for appellants.

 S. Luke Craven, David L. Phipps, and Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, for appellee.



 Heard by Doyle, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Appellants appeal a district court order granting FBL Financial Group, Inc.'s (FBL) motion to dismiss appellants' civil petition at law forwarding claims of bad faith, interference with contract, and conspiracy or aiding and abetting bad faith.

I.      **Background Facts and Proceedings**

The petition alleged the following facts.  Joshua Naeve died in August 2013 as a result of a motor-vehicle accident involving a vehicle in which he was a passenger; he was nineteen years of age.  Joshua's parents, Thad and Nancy Naeve, were appointed as administrators of Joshua's estate in September.  The driver of the vehicle was insured by an automobile liability insurance policy up to $1.5 million.  Several parties, including the Naeves, made demands for damages alleged to have been incurred as a result of the driver's negligence.  The entirety of the coverage available under the policy was used to settle multiple claims, which ultimately included remittance of $500,000 to the Naeves in return for a release from liability.

The Naeves had an insurance policy with Farm Bureau Property & Casualty Insurance Company (Farm Bureau), which included underinsured motor-vehicle coverage providing the named insureds—Thad, Nancy, and Joshua—with insurance benefits covering damages exceeding the amount paid by the driver's policy up to the policy limit under the Farm Bureau policy.  FBL is the "corporate parent" of Farm Bureau.  In return for a management fee, FBL manages all aspects of Farm Bureau's operations, including the management of all claims made under underinsured policies made by insureds of Farm Bureau.   Under the

circumstances, the Farm Bureau policy provided the Naeves with insurance benefits up to $250,000.

The Naeves filed an underinsurance claim with Farm Bureau in June 2014. The petition alleged Farm Bureau, under the management and at the direction of FBL, rejected the claim asserting it could not evaluate it until it received information regarding the settlement received from the driver of the vehicle. Although Farm Bureau was made aware the Naeves' claim exceeded the limits of the driver's policy, Farm Bureau refused to pay the Naeves underinsurance benefits. The Naeves hired an attorney and, on April 29, 2015, filed a breach-of-contract lawsuit against Farm Bureau. Farm Bureau, under the management and direction of FBL, continued to contest the Naeves' entitlement to proceeds under the underinsurance policy. The matter proceeded to a jury trial. The jury returned a verdict against Farm Bureau and in favor of the Naeves, and the court entered judgment against Farm Bureau in the amount of $250,000, the amount to which the Naeves were entitled under the circumstances, plus court costs and interest until paid, which Farm Bureau satisfied in June 2016.

In September 2017, appellants filed a petition at law against FBL forwarding claims of bad faith, interference with contract, and conspiracy or aiding and abetting bad faith. Generally, appellants' claims were based on FBL's conduct as manager of Farm Bureau in relation to the underinsurance claim and resulting litigation. FBL moved to dismiss the petition for failure to state a claim upon which any relief may be granted. See Iowa R. Civ. P. 1.421(1)(f). Specifically, FBL argued appellants' claims were barred by the doctrine of claim preclusion, stating "all facts alleged by Plaintiffs giving rise to their . . . claims against FBL . . . occurred

*before* Plaintiff's initial suit against Farm Bureau under the policy," Farm Bureau and FBL are in privity, and the claims were therefore required to be forwarded "at the same time as claims for contractual damages arising out of the same transaction." FBL alternatively argued appellants' claims stemming from the Farm Bureau policy do not extend to FBL, because FBL was not a party to the contractual relationship. Appellants filed a resistance.

Following an unreported hearing, the district court entered an order granting FBL's motion to dismiss. As to count one, bad faith, the court concluded: "Because there was a valid and final judgment previously rendered and Farm Bureau was in privity with FBL, the Naeves' bad faith claim against FBL is barred by the doctrine of claim preclusion" because "bad faith claims against an insurer *must* be brought at the same time as claims for contractual damages arising out of the same transaction." As to count two, interference with contract, the court determined the claim does not apply to FBL due to the relationship among the parties. As to count three, conspiracy or aiding and abetting bad faith, the court essentially repeated the conclusion it reached under count one and additionally concluded the claim does not extend to FBL. As noted, the appellants appeal.

## II.    Standard of Review

Appellate review of a district court ruling granting a motion to dismiss is for correction of errors at law. *Ackerman v. State*, 913 N.W.2d 610, 614 (Iowa 2018). "A motion to dismiss should only be granted if the allegations in the petition, taken as true, could not entitle the plaintiff to any relief." *King v. State*, 818 N.W.2d 1, 9 (Iowa 2012) (quoting *Sanchez v. State*, 692 N.W.2d 812, 816 (Iowa 2005)). Denying a motion to dismiss is appropriate unless the petition "on its face shows

no right of recovery under any state of facts." *Ritz v. Wappello Cty. Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999) (quoting *Schaffer v. Frank Moyer Constr., Inc.*, 563 N.W.2d 605, 607 (Iowa 1997)). "[W]e view the petition in the light most favorable to the plaintiff, and will uphold dismissal only if the plaintiff's claim could not be sustained under any state of facts provable under the petition." *Ackerman*, 913 N.W.2d at 614 (quoting *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 108 (Iowa 2011)). We accept as true the petition's factual allegations but not its legal conclusions. *Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016). We do not consider facts contained in the motion to dismiss. *See McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010).

### III.    Analysis

We first address counts one and three, which alleged bad faith on the part of FBL, the latter by way of aiding and abetting or conspiracy. Because both causes are rooted in the same operative facts and based on the allegation that FBL breached a duty of good faith, we consider them together. "The Iowa law of claim preclusion," a branch of res judicata,[1] "closely follows the Restatement (Second) of Judgments." *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719 (Iowa 2016) (quoting *Shumaker v. Iowa Dep't of Transp.*, 541 N.W.2d 850, 852 (Iowa 1995)). The general rule of merger provides that "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff," "[t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof."

---

[1] The doctrine of res judicata includes both claim and issue preclusion. *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011). Uses of the term in this opinion are references to claim preclusion.

Restatement (Second) of Judgments § 18 (Am. Law Inst. 1982). When a plaintiff's claim is extinguished by the rule of merger, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* § 24(1); *accord Villarreal*, 873 N.W.2d at 720.

> What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24(2).

Both parties *and their privies* are bound by and entitled to the benefits of claim preclusion. *See, e.g.*, *Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."); *Shumaker*, 541 N.W.2d at 852 (noting the general rule is that claim preclusion extends to privies of a party).[2]

---

[2] The concept of parties and their privies under Iowa law appears to have been influenced, at least in part, by the Restatement (First) of Judgments. *See* Restatement (First) of Judgments § 83 (Am. Law Inst. 1942) ("A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is . . . bound by and entitled to the benefits of the rules of res judicata."); *see also Stucker v. Muscatine Cty.*, 87 N.W.2d 452, 456 (Iowa 1958) (noting res judicata is available to parties and their privies (citing Restatement (First) of Judgments §§ 82–83)); *Hawley v. Davenport, R.I. & N.W. Ry. Co.*, 45 N.W.2d 513, 516 (Iowa 1951) ("The general rule is that the doctrine of res judicata is available only to the parties to a prior adjudication and their privies." (citing Restatement (First) of Judgments §§ 82–83)).

However, the concept of privity is not as apparent in the Second Restatement. The Second Restatement was released in 1982, but our supreme court began relying on tentative drafts of it before that time. *See, e.g.*, *Ideal Mut. Ins. Co. v. Winker*, 319 N.W.2d 289, 291–92 (Iowa 1982); *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 402 (Iowa 1982); *Nat'l Equip. Rental Ltd. v. Estherville Ford, Inc.*, 313 N.W.2d 538, 542 (Iowa 1981); *Village Supply Co., Inc. v. Iowa Fund, Inc.*, 312 N.W.2d 551, 554 (Iowa 1981); *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123–26 (Iowa 1981); *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331, 337 (Iowa 1980); *Citizens for Washington Square v. City of Davenport*, 277 N.W.2d 882, 885 (Iowa 1979); *In re Evans*, 267 N.W.2d

"A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is . . . bound by and entitled to the benefits of the rules of" claim preclusion. Restatement (First) of Judgments § 83; *accord Pavone*, 807 N.W.2d at 836. Claim preclusion "generally embraces in its entirety the effect of a judgment as preventing the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a former judgment." *Stucker*, 87 N.W.2d at 456. Claim preclusion may bar matters never actually litigated when the party against whom it is asserted had a full and fair opportunity to litigate the claim against a party or privy in a prior action. *See Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002). The term "privy" includes, among other things, "those who control an action although not parties to it" and "those whose interests are represented by a party to the action." Restatement (First) of Judgments § 83 cmt. a.

---

48, 51 (Iowa 1978); *Wright v. Haskins*, 260 N.W.2d 536, 540–42 (Iowa 1977); *Edmundson v. Miley Trailer Co.*, 252 N.W.2d 415, 420 (Iowa 1977).

It appears the court began using the final version of the Second Restatement for claim-preclusion considerations shortly thereafter. *See Noel v. Noel*, 334 N.W.2d 146, 148 (Iowa 1983). However, the concept of parties and privies, which appears to have been partially influenced by the First Restatement, has continued to be a branch of claim preclusion under Iowa law, although the First Restatement has not been expressly referenced. *See, e.g., Pavone*, 807 N.W.2d at 836; *Colvin v. Story Cty. Bd. of Review*, 653 N.W.2d 345, 348 (Iowa 2002); *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998); *Shumaker*, 541 N.W.2d at 852; *Riley v. Malone*, 499 N.W.2d 18, 20 (Iowa 1993). Due to the apparent lack of privity guidance in the Second Restatement as compared to the First Restatement, coupled with the indication that the privity concept was influenced by the First Restatement, we will turn to the First Restatement for additional guidance.

But that is not to say the Second Restatement has no say on who is entitled to the benefits of claim preclusion. The court has also applied section 51 of the Second Restatement, which extends the effects of claim preclusion as to damages to nonparties who are vicariously liable to the injured person. *See Shivvers v. Hertz Mgmt. Co.*, 595 N.W.2d 476, 481 (Iowa 1999); *Kimmel v. Iowa Realty Co., Inc.*, 339 N.W.2d 374, 378 (Iowa 1983).

Appellants challenge the district court's conclusion that FBL was in privity with Farm Bureau and therefore entitled to the benefits of claim preclusion. Appellants' petition alleged FBL to be the "corporate parent" and manager of "all aspects" of Farm Bureau and variously alleged Farm Bureau acted "under the management and at the direction of FBL" in relation to both the underlying insurance claim and the resulting litigation. "[W]here the one in control of the action . . . controls it because of his connection with the transaction out of which the suit arose, he is bound by and entitled to the benefits of the rules of res judicata . . . ." *Id.* § 84 cmt. b. Further, as "corporate parent" of Farm Bureau, FBL's "interests [were] represented by a party to the action." *See id.* § 83 cmt. a. Finally, "the status test for privity is broadly applied if the party against whom claim preclusion is invoked had a full and fair opportunity to litigate the claim." *Shivvers*, 595 N.W.2d at 481. Appellants were on notice of FBL's involvement, and could have litigated the claims along with the claims against Farm Bureau but did not. Upon our review of the petition, which shows FBL was highly involved with and interested in the underlying claim and the resulting litigation, we agree with the district court that FBL was in privity with Farm Bureau.

We turn to whether appellants' bad-faith claims were precluded. Our conclusion that FBL and Farm Bureau were in privity renders appellants' bad-faith causes of action no different from claims of first-party bad faith. As noted, when a plaintiff's claim is extinguished by the rule of merger, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which

the action arose." Restatement (Second) of Judgments § 24(1). Our supreme court has held:

> [A] first-party bad-faith claim based on denial of insurance benefits without a reasonable basis ordinarily arises out of the same transaction as a breach-of-contract claim for denial of those same benefits. This means a final judgment in the breach-of-contract case would bar the bringing of a subsequent, separate bad-faith lawsuit.

*Villarreal*, 873 N.W.2d at 728–29. That being said, "a bad-faith claim based on events subsequent to the *filing of* a breach-of-contract claim [are] not precluded by a judgment in the breach-of-contract case." *Id.* at 721–22 (emphasis added) (discussing *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990)); *accord id.* at 729 ("[W]hen the bad-faith claim is based on conduct that occurred after the breach-of-contract case was filed, that is a different kettle of fish.").

Here, as to the bad-faith claims, counts one and three, the petition in this case ("second petition") alleged conduct on the part of FBL that occurred both before and after the filing of the petition at law against Farm Bureau ("first petition") in April 2015. Obviously, appellants "could have raised" the pre-first-petition allegations concerning bad faith in the breach-of-contract action, and any claim of bad faith on the part of FBL in relation to those allegations is therefore barred by the doctrine of claim preclusion. *See id.* at 729–30.

As to the post-first-petition allegations, the second petition first complained of Farm Bureau's denials for lack of information in its answer to the first petition as a result of the failures of Farm Bureau and FBL to fully and fairly investigate and evaluate the claim. This complaint likewise relates to the alleged pre-first-petition failures of the entities in denying the claims and "could have been raised" in the

first petition. *See id.* at 729. Next, the second petition complained of the entities' "continuously contesting" of liability and damages during litigation on improper bases by (1) "the intentional obtaining of economic evidence to artificially limit the calculation of, and jury consideration of, loss of accumulation of" the estate and (2) "improperly assert[ing] and request[ing] the court to bar testimony, evidence and recovery as to the loss of consortium claims." FBL's conduct during the proceedings in the first lawsuit, although occurring post-first-petition, was a part of the series of connected transactions out of which the breach-of-contract action arose. Although post-petition conduct may give rise to a separate and subsequent bad-faith claim, in this case it is clear Farm Bureau's response to, or behavior during, the first lawsuit was not new or different conduct, but was merely a continuation of the same consistent responses to the appellants' claims for additional policy benefits. It is the alleged unreasonable denial of their claims for policy benefits which the appellants claim gave rise to the pre-first-petition claims of bad faith. Making the same denials in response to the breach-of-contract lawsuit is not new conduct, and claims relating to that conduct are therefore extinguished by the valid and final judgment in that case. *See* Restatement (Second) of Judgments § 24. Simply stated, the bad-faith claims could have been raised in the first petition. The complained of conduct on the part of FBL during the proceedings could have been presented to the jury as evidence in support of the claims. Consequently, we agree with the district court's conclusions on FBL's motion to dismiss as to counts one and three.

Because we may affirm "a district court ruling on a ground other than the one upon which the district court relied *provided* the ground was urged in that

court," and we realize the liberality accorded notice pleadings and the burden of sustaining a pre-answer motion to dismiss, we will consider an alternative theory FBL raised in its motion to dismiss but was not addressed in the district court's ruling. *See DeVoss v. State*, 648 N.W.2d 56, 61 (Iowa 2002). FBL's motion asserted dismissal was necessary because there was no contractual relationship between FBL and the Naeves, and there was no special relationship that would establish a duty of good faith. The Naeves resisted that allegation in its brief in resistance to the motion.

While this case was pending on appeal, our supreme court decided a case which gives guidance on this issue. "In Iowa, the bad-faith cause of action arises from (1) the special contractual relationship between insurer and insured, (2) the specific statutory and administrative duties imposed on insurers, or (3) some combination of the two." *De Dios v. Indem. Ins. Co. of N. Am.*, ___ N.W.2d ___, ___, 2019 WL 2063289, at *1 (Iowa 2019) (deciding a certified question as to whether Iowa law recognizes a claim of bad faith against a third-party claims administrator in a workers' compensation case). The court quoted with apparent approval from Couch on Insurance:

> An insurer cannot delegate its duty of good faith. Therefore, an agent of the insurer, while acting on the insurer's behalf by carrying out the insurer's contractual obligations, is under the same duty of good faith as the insurer itself. Under varying circumstances, the good faith requirement has been held to also apply to attorneys of the insured.
> This duty, however, only runs so far. While an insurer's agent may be subject to the insurer's duty of good faith, the agent does not also incur personal liability to the insured. The lack of contractual privity prevents courts from finding such liability, even in cases where the agent in question is a reinsuring subsidiary.

*Id.* at *8 (quoting 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 198:17, at 198-38 to 198-39 (3d ed. 2018 Update)).

Iowa has chosen to follow the majority of jurisdictions that have considered the issue of whether a bad-faith claim arising out of denial of insurance benefits may be brought against a third-party administrator or any other entity that is not in privity with the insured, and have denied such claims.

> Various policy reasons have been given for this majority rule. "An adjuster owes a duty to the insurer who engaged him. A new duty to the insured would conflict with that duty and interfere with its faithful performance. This is poor policy." Also, "in most cases this [new duty] would be redundant, since the insurer also would be liable for unreasonable investigation or claims handling."

*Id.* at *10 (alteration in original) (citations omitted).

The Naeves' second petition makes it clear there was no insurance or other contract between them and FBL. Accordingly, FBL owed Naeves no duty of good faith; thus there is no liability for the alleged bad faith of FBL. We affirm the district court's dismissal of counts one and three.

As to count two, interference with contract, the Naeves' petition generally alleged FBL wrongfully interfered with the insurance contract between the Naeves and Farm Bureau. The district court concluded, "Based upon the relationship of the parties, the claim of interference with a contract does not apply as to FBL." A recent decision of another state's high court considered "whether a parent company may be held liable for tortious interference with a contractual relationship between its wholly-owned subsidiary and a third party." *Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569, 570 (Ky. 2019). Following the Restatement (Second) of Torts, the court held "a parent company has a qualified privilege to

interfere with the contractual relations of its wholly-owned subsidiary *unless* it employs wrongful means, or its interference is not in the economic interest of the subsidiary." *Id.* (emphasis added); *see also id.* at 571–72 (collecting cases reaching the same conclusion).

Although Iowa appellate courts have not previously considered the issue, we have likewise followed the Second Restatement of Torts when deciding other claims of interference with contract. *See, e.g.*, *Kern v. Palmer Coll. Of Chiropractic*, 757 N.W.2d 651, 663–644 (Iowa 2008); *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 244 (Iowa 2006); *Nesler v. Fisher & Co., Inc.*, 452 N.W.2d 191, 194–95 (Iowa 1990); *RTL Distrib., Inc. v. Double S Batteries, Inc.*, 545 N.W.2d 587, 590–91 (Iowa Ct. App. 1996). The Kentucky Supreme Court, following the Tennessee Supreme Court, defined "wrongful means" as "acts which are wrongful in and of themselves, such as misrepresentations of facts, threats violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or common law." *Sparkman*, 571 S.W.3d at 572 (quoting *Waste Conversion Sys., Inc. v. Greenstone Indus. Inc.*, 33 S.W.3d 779, 784 (Tenn. 2000)). Our supreme court has similarly described wrongful means as "conduct that is dishonest, fraudulent, malicious, or otherwise wrongful." *Kern*, 757 N.W.2d at 663–64. In this case of first impression, we are disinclined to find as a matter of law that Iowa courts should not consider the viability of a claim against a parent corporation for interference with a contract between a subsidiary corporation and a third party.

At the motion to dismiss stage, "we view the petition in the light most favorable to the plaintiff, and will uphold dismissal only if the plaintiff's claim could

not be sustained under any state of facts provable under the petition." *Ackerman*, 913 N.W.2d at 614. Per *Sparkman*, a parent company (FBL) has a qualified privilege to interfere with the contractual relations of its subsidiary (Farm Bureau) unless either of the following occur: (1) the parent company employs wrongful means or (2) the interference is not in the economic interest of the subsidiary. 571 S.W.3d at 570. We therefore disagree with the district court's dispositive finding that the relationship among the parties, alone, relieves FBL of any liability. Further, as to wrongful means, the Naeves' petition provided detailed charges of allegedly improper and intentional acts on the part of FBL. Although *De Dios* indicates a third-party claims administrator is not liable for bad faith under the common law, interference with contract is a separate cause of action and does not require bad faith, only intentional and improper interference. *See Nesler*, 452 N.W.2d at 194 (quoting Restatement (Second) of Torts § 766). Viewing the petition in the light most favorable to the Naeves, we find the allegations concerning improper means sufficient to survive a motion to dismiss on the interference-of-contract claim.[3]

Viewing the petition in the light most favorable to the Naeves, we find the court erred in granting FBL's motion to dismiss the interference-with-contract claim.

---

[3] Having reached this conclusion, we offer no opinion on the viability of any other theory. We likewise offer no opinion specifically as to whether the cited section or some other section of the Restatement (Second) of Torts may ultimately prevail, or whether the facts will not support the claim at all. We only decide there are sufficient allegations to survive the motion to dismiss.

**IV.     Conclusion**

We affirm the dismissal of the Naeves' bad-faith claims.  We reverse dismissal of the interference-with-contract claim.  We remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**